LONG ISLAND COLLEGE HOSPITAL et al., on Behalf of Themselves and All Other Nonprofit Hospitals Located in the State of New York Similarly Situated, Respondents, v ROBERT P. WHALEN, as Commissioner of the Department of Health of the State of New York, Appellant.

Third Department, May 24, 1979

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Jeremiah Jochnowitz and Clifford A. Royael* of counsel), for appellant.

*Proskauer, Rose, Goetz & Mendelsohn (Lois D. Thompson* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

Prior to 1975, defendant, who is responsible for establishing reimbursement rate schedules for hospitals and nursing homes which provide hospital and health-related services to needy persons pursuant to the Medicaid program (see US Code, tit 42, § 1396 *et seq.)* and persons covered by insurance provided by corporations organized under article 9-C of the Insurance Law (e.g., Blue Cross-Blue Shield of Greater New York), had included litigation expenses as an allowable cost in determining a facility's reimbursement rate. In a news release, dated February 6, 1975, defendant announced that certain legal fees and other expenses involving litigation against the State would no longer be considered allowable costs and that the new policy would be applied retroactively to costs reported for the years 1971 and thereafter. A hospital memorandum, dated March 7, 1975, stated that "litigation expenses may not be considered as allowable costs in computing reimbursement rates". Attached to the memorandum was a form with instructions for reporting legal fees, litigation expenses and dues and fees of professional organizations. In June, 1975 plaintiffs, two nonprofit hospitals, commenced this declaratory judgment action seeking to invalidate defendant's new policy and to enjoin its enforcement. Thereafter, plaintiffs moved for an order permitting the action to proceed as a class action (CPLR 902) on behalf of all nonprofit hospitals located in the State. After their motion was granted, plaintiffs moved for summary judgment and defendant cross-moved for similar relief. Plaintiffs' motion was granted and defendant appeals from both the order granting plaintiffs' motion for summary

judgment and the order granting plaintiffs permission to proceed with the action in class action form.

■ Initially, we note that defendant has not issued a clear and concise statement as to which litigation expenses and legal fees are to be disallowed. As noted above, the press release speaks in terms of certain legal fees and other expenses involving litigation against the State, including expenses for legal representation in relation to investigation, departmental hearings, reimbursement rate appeals and court actions to block the closing of unsafe facilities, but the release quoted defendant as stating "[c]ertain legal expenses are legitimate and will continue to be approved." The hospital memorandum, on the other hand, states that litigation expenses will be disallowed, without any differentiation between litigation with the State and other litigation expenses. While inferences might be drawn from an examination of the reporting form attached to the memorandum as to which expenses will be disallowed, we conclude that defendant's announced policy is totally lacking in specificity so as to adequately inform the affected facilities of the standards to be applied in determining which legal fees and litigation expenses will be disallowed. Failure to provide such objective standards renders defendant's policy unreasonable and arbitrary (cf. *Matter of Levine v Whalen,* 39 NY2d 510, 518-519; *Matter of Koelbl v Whalen,* 63 AD2d 408), particularly since the policy constitutes a dramatic departure from past practices.

Next, we note that defendant's policy apparently seeks to set a fixed standard for disallowing certain expenses in calculating Medicaid and Blue Cross reimbursement rates, rather than establishing a guideline for a case-by-case analysis of the facts surrounding the expenses to determine whether it will be allowed. In our view, such a policy establishes a general course of operation to be effective for the future and, accordingly, comes within the rule or regulation filing requirement of the Constitution (NY Const, art IV, § 8; see Executive Law, § 101-a, subd 1, par b; § 102; *People v Cull,* 10 NY2d 123, 127; *Matter of Sturman v Ingraham,* 52 AD2d 882). Moreover, since the policy is, in essence, a regulation which affects reimbursement rates for hospitals and health-related services, it must be adopted by the State Hospital Review and Planning Council (Public Health Law, § 2803, subd 2).

Special Term found that defendant's policy of excluding all legal fees and expenses arising out of litigation with the State

is unreasonable and arbitrary, and on the record herein we agree. In general, the reimbursement rates must be "reasonably related to the costs of efficient production" of hospital services (Public Health Law, § 2807, subd 3). This requirement is consistent with Federal law (see US Code, tit 42, § 1396a) and, in fact, New York's Medical Assistance Plan has been approved by the Secretary of Health, Education and Welfare. Defendant has stated that litigation expenses will no longer be considered as allowable costs "since by nature they would not meet the test of being reasonably related to the efficient production of hospital service or health-related service". There is, however, nothing in this record to support such a conclusion. Since defendant's policy is, in effect, a regulation which is legislative in nature, it will be upheld only "if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious" (*Grossman v Baumgartner,* 17 NY2d 345, 349). Here, defendand submits as the basis for its regulation a bald, conclusory assertion, without supportive factual findings. Moreover, this assertion that litigation expenses are not reasonably related to the efficient production of hospital services is patently in conflict with defendant's past practice of allowing such costs and should, therefore, be supported by some rational explanation for the change.

An examination of the record reveals that defendant's decision to no longer allow litigation expenses, was, in reality, a cost-saving device, based upon the conclusion that the taxpayers should not subsidize litigation between a facility and the State. While efforts at more efficient use of taxpayers' dollars are to be encouraged, such efforts may not ignore the legislative standards for determining the manner in which those dollars must be expended. Here, the determination of whether to allow litigation expenses must be based upon the relationship of such expenses to the efficient production of hospital services, not whether taxpayers should subsidize litigation between a facility and the State. Accordingly, we conclude that defendant's determination is without a rational basis and cannot be sustained.

■ On the issue of class action relief, the Court of Appeals has held that class actions are not necessary "where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of *stare decisis" (Matter of Jones v Berman,* 37 NY2d 42, 57). We find nothing in article 9 or its legislative history to indicate an

intent to overrule this holding, and its rationale has been applied to motions pursuant to CPLR 902 (see *Matter of Holmes v Aiello,* 65 AD2d 815). Accordingly, we conclude that Special Term erred in granting plaintiffs' motion to proceed with their action in class action form.

The order, entered November 28, 1977, should be affirmed, without costs; the order, entered January 26, 1976, should be reversed, on the law, and the motion, pursuant to CPLR 902, should be denied, without costs.

GREENBLOTT, KANE, MAIN and MIKOLL, JJ., concur.

Order, entered November 28, 1977, affirmed, without costs; order, entered January 26, 1976, reversed, on the law, and motion pursuant to CPLR 902 denied, without costs.