■ In the Matter of JUDITH CHAMBERY et al., Doing Business as MAPLEWOOD NURSING HOME, Petitioners, v DAVID AXELROD, as Commissioner of Health of

the State of New York, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of Health which denied petitioners' application for approval to construct an addition to their existing nursing home. ¶ We are once again called upon to review a determination of the Commissioner of Health, who, in the underlying proceedings, denied an application made pursuant to subdivision 2 of section 2802 of the Public Health Law for approval to construct a 48-bed addition to petitioners' nursing home. ¶ Petitioners' initial argument that the denial was arbitrary and capricious and unsupported by substantial evidence is unpersuasive. They correctly argue that while respondent Commissioner may enforce regulations which prohibit discriminatory sponsorship policies (i.e., preclude or limit the number of Medicaid supported patients either as initial admittees or as retention patients after exhaustion of private funds), he may do so "only if reimbursement rates are not lower than the fee charged other patients" (*Matter of Blue v Whalen,* 57 AD2d 240, 243). Equally correct and well settled is the principle that participation by a provider of health services in the Medicaid program is purely voluntary (*Matter of Sigety v Ingraham,* 29 NY2d 110, 115; *Matter of Kaye v Whalen,* 56 AD2d 111, 119, affd 44 NY2d 754, app dsmd 439 US 922). These arguments, however well grounded, are of no moment in this proceeding where the Commissioner's action under review is not an attempt to enforce or impose a mandatory Medicaid admission policy. Rather, our review is focused upon whether his denial of the application was violative of the applicable statute and regulations. Section 2802 (subd 2, par [b]) of the Public Health Law states, in pertinent part, that the Commissioner shall not act upon an application for construction of a hospital (facility) unless he "is satisfied as to the public need for the construction, at the time and place and under the circumstances proposed". ¶ The Department of Health's regulations set forth the factors which are relevant to the determinations of public need. 10 NYCRR 709.1 (a) provides, in pertinent part: "The factors for determining public need for health services and medical facilities shall include, but not be limited to: (1) the current and projected population characteristics of the service area, including relevant health status indicators and socioeconomic conditions of the population." Similarly, 10 NYCRR 709.1 (b) provides, in relevant part: "The evaluative procedure for review of public need pursuant to section 2802 of the Public Health Law shall include, but not be limited to: * * * (3) identification of current and projected user population of the service area". Additionally, title 42 (§ 123.412, subd [a], par [6], cl [iii]) of the Code of Federal Regulations provides that when a State agency reviews a proposal for expansion, it must consider "[t]he contribution of the proposed service in meeting the health related needs of members of medically underserved groups which have traditionally experienced difficulties in obtaining equal access to health services" and thus must consider "[t]he extent to which Medicare, Medicaid and medically indigent patients are served by the applicant". ¶ These principles in mind, examination of the record demonstrates that petitioners historically had a low number of Medicaid admissions and that their admissions agreement reserves the right to terminate the stay of initially private paying patients who subsequently become Medicaid dependent upon exhaustion of private resources. Although at the time of filing the application and at the hearing between 42% and 50% of petitioners' patients had become Medicaid dependent, the admissions policy containing the reservation right continued in effect. Since the proof showed that the vast majority of persons in Monroe County needing long-term care were Medicaid dependent, it cannot be said the Commissioner erred in approving the application of another nursing home without admission reservations in preference to petitioners' application.

Recognition of the characteristics and socioeconomic conditions in the user population to be served, which demonstrated the need for Medicaid-sponsored beds, made the Commissioner's determination both logical and reasonable. We find no defect in the regulations with respect to Medicaid admissions policy nor in the Commissioner's methodology for determining the need for Medicaid-sponsored patient beds in 1980, the year of petitioners' application. We find that the record contains substantial evidence to support the determination (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176). ¶ We further reject petitioners' contention that respondents violated the regulations permitting "batching" or grouping of applications for simultaneous consideration at specific time intervals (see 10 NYCRR 710.11). We find no prohibition against processing of petitioners' application together with subsequently filed applications, nor regulatory requirement for priorities or sequential processing. Moreover, there is nothing in the record to indicate that petitioners' application would have received more favorable consideration or approval had it been processed at an earlier time. The further argument that respondents violated 10 NYCRR 709.3 (b), as it existed at the time being considered herein, by netting the total skilled nursing beds and health-related facility beds available in the county is without merit. Clearly, the regulation pertaining to "temporary conversion" of health-related beds to skilled nursing home beds (see 10 NYCRR 709.3 [c]), as it then existed, was a mechanism to supplement the ordinary process during times of emergency, not to replace it. It is clear that respondents' interpretation of its own rules is both reasonable and rational, requiring that we defer to such interpretation (*Matter of Albano v Kirby,* 36 NY2d 526, 532; *Matter of Howard v Wyman,* 28 NY2d 434). Nor do we find merit in petitioners' contention that respondents failed to include the unmet needs of neighboring Wayne County for nursing home beds as part of petitioners' geographical service area. The record demonstrates that sufficient proof of relevant statistics pertaining to Wayne County was adduced to enable respondents to properly consider the needs of the entire area (cf. *Matter of Fairfield Nursing Home v Whalen,* 64 AD2d 802). Finally, petitioners' failure to have raised an objection at the administrative level to respondents' construction review methodology as violative of Federal Medicare and Medicaid laws pertaining to patients' freedom in choice of nursing homes precludes review by this court (*Matter of Smith v New York State Policemen's & Firemen's Retirement System,* 89 AD2d 674; *Matter of Malkin v Tully,* 65 AD2d 228, 230). ¶ Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Main, Weiss and Harvey, JJ., concur.