◼ In the Matter of ALBERT BAIRD, Doing Business as BAIRD NURSING HOME, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term entered in Albany County) to review a determination of the Commissioner of Health which denied petitioner's application for permission to construct two additional nursing home beds. ¶ Petitioner contends that respondent lacks the authority to prohibit petitioner from constructing additional nursing home beds on the basis of public need since petitioner accepts no governmental funds for the operation of his facility. Petitioner further contends that, in any event, respondent's finding of a lack of public need for two additional nursing home beds in Monroe County is not supported by substantial evidence in the record. We reject both arguments. ¶ Respondent's supervisory authority over hospital construction is derived from clear and unambiguous statutory language. Section 2802 of the Public Health Law provides that "[t]he construction of a hospital, whether public or private, incorporated or not incorporated, shall require the prior approval of the commissioner". Section 2802 (subd 2, par [b])

specifically provides that such approval shall not be granted unless "the commissioner is satisfied as to the public need for the construction, at the time and place and under the circumstances proposed". Petitioner does not challenge the constitutionality of this statutory delegation of authority to respondent, but rather, argues that the public need portion of the statute is inapplicable to facilities, such as petitioner's which do not accept public funds. The statute, however, plainly applies to all hospitals, irrespective of whether their funding comes from private or public sources. In conditioning respondent's approval on a finding of public need for the proposed facility, the statute makes no distinction between hospitals that receive public funding and those that do not. Since respondent acted pursuant to a clear and unambiguous legislative mandate, which petitioner does not challenge as unconstitutional, respondent's determination to require a showing of public need is not irrational. ¶ Turning next to the substantial evidence question, the record contains testimony of a hospital planner concerning the use of a formula for predicting public need which takes into account existing beds, plus beds approved for construction, in comparison with a use rate projected five years into the future (see 10 NYCRR 709.3). Application of this formula herein revealed an excess of long-term care beds through both 1984 and 1985. Petitioner contends that the formula is faulty since it does not distinguish between skilled nursing facilities and health-related facilities, but rather, lumps them together in considering long-term bed care needs. Testimony established that the formula was so designed due to the flexibility between the two levels of care, with patients often changing from one level of care to another, and with facilities having the option of converting from one level of care to another. Petitioner also relies on several evidentiary facts which tend to conflict with the evidence of lack of need. Thus, petitioner points to a backup of patients in hospitals in Monroe County awaiting alternate care. Also noted is the withdrawal of an approved application by another facility to construct additional long-term beds in Monroe County, which had been considered in determining public need for the two additional beds proposed by petitioner. This evidence is equivocal at best. Concerning the backup, there is testimony in the record that an increase in long-term care beds does not necessarily correlate to a decrease in hospital backup since there are many varied reasons for the backup. As to the withdrawal of the approved application for additional beds, the excess long-term care beds projected by the department's formula exceeded the number of beds included in the withdrawn application. ¶ Finally, petitioner contends that respondent wrongfully denied his application on the ground that the facility did not accept Medicaid patients. Respondent's determination, however, relies largely upon a finding of lack of public need, which, as noted above, is supported by substantial evidence. Respondent merely noted that if there were a projected bed shortage, the better practice would be to give preference to those facilities that accept Medicaid patients, since Medicaid patients make up 75% of those needing long-term care (see *Matter of Chambery v Axelrod,* 101 AD2d 610). ¶ In sum, petitioner's arguments tend to show that there might have been a rational basis for granting petitioner's application, but these arguments fall short of establishing that the contrary determination actually made by respondent was irrational or lacked substantial evidentiary support in the record. Accordingly, the determination must be confirmed and the petition dismissed. ¶ Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Casey, Weiss and Levine, JJ., concur; Kane, J., dissents and votes to annul in the following memorandum.

Kane, J. (dissenting). This case presents a simple, but very serious, issue involving the limits of governmental control over private independent enterprise. It is conceded that petitioner is fully qualified by character, competence

and financial ability to operate and maintain a skilled nursing home facility and that he has operated this facility since 1953; that he was licensed as a 30-bed facility, but as a result of modifications and improvements made in 1965 to comply with respondent's Life Safety Code, his capacity was reduced to 28 beds; and that he has never participated in the Medicaid program, nor has he ever received any public funds either as reimbursement for operating expenses or for construction costs. As a matter of fact, his recently completed modernization project, accomplished with prior approval by the State, was paid for through private financing. And petitioner only seeks authorization for two additional beds, which would restore his facility to its authorized capacity. Yet respondent, in his decision of November 1, 1982, found that petitioner could not obtain approval because the availability of beds he requested would be limited to private-pay patients, who represented only 25% of the existing backlog of patients requiring nursing home care. Unlike the circumstances described in our recent decision in *Matter of Chambery v Axelrod* (101 AD2d 610), this record demonstrates a determined effort to enforce or impose a mandatory Medicaid admissions policy on petitioner and presumably upon all similarly situated facilities. In my view, such a policy is not only arbitrary and capricious and an abuse of discretion, but beyond the powers of respondent (see *Matter of Levine v Whalen,* 39 NY2d 510). ¶ Nor is his determination supported by the record. Subsequent to the report of the administrative law judge, dated July 14, 1982, which recommended approval, the local Health Systems Agency, by memorandum dated August 19, 1982, certified a need for additional long-term care beds in Monroe County because of the cancellation of a prior approval for 46 health-related facility beds and 16 skilled nursing home beds by the New York State Office of Health Systems Management. This memorandum and the significance of its contents were made known to respondent by written communication dated August 30, 1982. His final order did not refer to it in his computation of need, and it must be assumed it was not considered. Thus, respondent's assessment of the question of need is clearly erroneous, and the determination irrational as not founded upon substantial evidence (see *Matter of Fairfield Nursing Home v Whalen,* 64 AD2d 802). ¶ The petition should be granted and the determination annulled.