In the Matter of AURELIA OSBORN FOX MEMORIAL HOSPITAL, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, October 25, 1984

APPEARANCES OF COUNSEL

*Akin, Gump, Strauss, Hauer & Feld* (*Harry R. Silver* of counsel), and *Bond, Schoeneck & King* for petitioner.

*Robert Abrams, Attorney-General* (*Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

OPINION OF THE COURT

WEISS, J.

Petitioner, a not-for-profit hospital corporation, annually files a Medicaid reimbursement rate schedule which is used by respondents to establish the rate allowed for reimbursement of patient care. Depreciation is one of the items

of cost included in the reimbursement rate computation (10 NYCRR 86-1.23). This controversy arose when the Department of Health (hereafter department) disallowed certain inclusions in petitioner's 1979 Medicaid funded depreciation schedule, to wit: an entry of "Due to/from Other Funds — $263,858", and the addition of a line "Overfunding from 1978 — $310,639" which petitioner typed onto the form. After filing an appeal from this determination, petitioner submitted an alternative schedule for the year 1979, in which the $263,858 initially listed as "Due to/from Other Funds", together with the sum of $200,000 which had been in a separate debt liquidation fund, were included on the form in the item labeled "Investments — $665,188". Also, the item "Overfunding from 1978 — $310,639", was eliminated. The department subsequently rejected petitioner's appeal since neither the $263,858 nor the $200,000 items were actually in a funded depreciation account on December 31, 1979, but were instead in a board-designated investment account. After a hearing, respondent Commissioner of Health adopted the findings and conclusions of the hearing officer who held first that the $263,858 reported as "Due to/from Other Funds" should be accepted as funded depreciation but that the "Overfunding from 1978 — $310,639" item and the $200,000 listed under "Investments" were unacceptable. This CPLR article 78 proceeding to challenge that determination ensued.

Initially, we note that the undated written policy directive entitled "Bureau of Health Care Reimbursement, Policy and Procedures Concerning Part 86.23, Depreciation", upon which the department premised its disallowance of the proposed depreciation items, was invalid. The department contends this directive established a policy mandating an actual transfer of cash into a specific restricted account to support the inclusion of depreciation on the reimbursement rate schedule. By comparison, the commissioner's formal, filed regulations provide only that "[d]epreciation shall be funded" (10 NYCRR 86-1.23 [b]). A conflict appears in the record as to whether health care providers were given notice of the directive which was neither dated nor filed with the Secretary of State. Since the directive effectively constituted an attempt to fix a

depreciation standard in the Medicaid reimbursement rate formula, it is within the rule or regulation requirement of the Constitution (NY Const, art IV, § 8; see Executive Law, § 101-a, subd 1, par b; *Long Is. Coll. Hosp. v Whalen,* 68 AD2d 274, 276). Filing with the Secretary of State of such regulatory edicts is mandated to assure public awareness and compliance (*People v Cull,* 10 NY2d 123).

Notwithstanding this conclusion, respondents assert that the plain terms of the regulation (10 NYCRR 86-1.23) establish a requirement that funds be presently transferred into a restricted account, and that this requirement provides the basis to disallow petitioner's alternatives to funded depreciation. In opposition, petitioner contends that funded depreciation under 10 NYCRR part 86 should be determined in accordance with generally accepted accounting principles and the reimbursement principles under the Medicare program (10 NYCRR 86-1.5, 86-1.21 [a]). We agree.

Both parties recognize the absence of a published interpretation of part 86 of the department's regulations. As a general guideline, however, section 86-1.5 of the regulations states, in pertinent part, that the financial reports are to be prepared "in accordance with generally accepted accounting principles". In addition, subdivision a of section 86-1.21 provides for "the application of the principles of reimbursement developed for determining payments under the title XVIII (Medicare) program" in assessing costs. Petitioner's expert testified that the use of a board-designated investment account which consists of a nonoperating fund used for capital projects would be an acceptable method of funding depreciation within the guidelines. Respondents' acceptance of the $263,858 "Due to/from Other Funds" item as funded depreciation indicates recognition of these principles. The record shows this $263,858, which had been in a board-designated investment account, was not transferred into a funded depreciation account until March of 1980, when petitioner's 1979 books were closed. Respondents concluded that since this item "was designated specifically to the depreciation fund at the close of the Facility's books for 1979", a sufficient nexus with the cost period was established. In contrast, respondents con-

cluded that the $200,000 investment item lacked a sufficient nexus to the 1979 fiscal year, since these funds were not submitted as an item of funded depreciation until the alternative schedule was filed in January, 1981. The issue resolves to whether this distinction is warranted. We think not.

The record establishes that the $200,000 investment item was included in the board-designated investment account as of December 31, 1979 and earmarked for retirement of the principal on a bond due in 1985. After respondents rejected petitioner's initial schedule, petitioner submitted a revised schedule including the $200,000 investment item to confirm that these funds were designated for 1979 depreciation purposes. Upon rejection of the alternative schedule, a meeting was held in April, 1982, during which respondents' chief fiscal analyst recommended the transfer of the $200,000 investment item into a separate funded depreciation account for better identification as a depreciation item. Petitioner immediately complied. It is thus clear that petitioner made every effort to correct its schedule in accordance with the department's regulation for amendments (10 NYCRR 86-1.3 [d]). While the time interval between December 31, 1979 and the transfer of the $200,000 in April, 1982 is greater than the transfer of the $263,858 in March, 1980, which respondents accepted, we do not find that fact dispositive. The Medicare Bureau's Health Care Financing Administration has previously held that an investment fund designated a funded depreciation account 16 months after the close of the cost-reporting period could qualify as funded depreciation (Medicare and Medicaid Guide [CCH], par 29,620). Application of this principle (10 NYCRR 86-1.21 [a]) leads us to conclude that the $200,000 investment item qualified as funded depreciation. This conclusion is buttressed by the subject regulation which anticipates the "amortization of capital indebtedness" (10 NYCRR 86-1.23 [b]) by funding depreciation, which is precisely what petitioner did in setting aside the $200,000 investment.

Finally, with respect to petitioner's attempt to fund depreciation with carry-over expenditures from 1978, we first note that the form of the schedule does not necessarily

determine what constitutes an appropriate depreciation item (see *People v Widelitz,* 39 Misc 2d 51). Thus, the fact that petitioner altered the form by adding a line which it called "Overfunding from 1978" is not dispositive of that item's validity. The hearing officer specifically acknowledged that this overfunding item actually represented a "carryover [of] capital expenditures from prior years", and yet concluded that this item "would not have been allowed as a matter of policy even when the Department allowed certain carryovers". This determination is inherently inconsistent, since the policy directive specifically authorized carryovers for capital expenditures. More importantly, as noted by petitioner's expert, the carryover of capital expenditures constitutes a viable accounting practice.

Having thus concluded, it is clear that respondents' determination is not supported by substantial evidence. That part of the determination which denied petitioner's submission regarding carryovers and the $200,000 investment item and which imposed a penalty should be annulled, and an adjustment to petitioner's 1979 funded depreciation schedule should be effected consistent with the decision herein.

KANE, J. P., CASEY, YESAWICH, JR., and LEVINE, JJ., concur.

Determination modified, without costs, by annulling so much thereof as denied petitioner's requests for adjustments to the 1979 funded depreciation schedule and imposed a penalty; matter remitted to respondents for further proceedings not inconsistent herewith; and, as so modified, confirmed.