In the Matter of ROMAN CATHOLIC DIOCESE OF ALBANY et al., Respondents-Appellants, et al., Respondents, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants-Respondents, and UPPER HUDSON PLANNED PARENTHOOD, INC., Intervenor-Appellant.

Third Department, June 20, 1985

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Deborah Bachrach, Robert Hermann, Rosemarie Rhodes, Lawrence S. Kahn, Alan D. Aviles* and *Martha J. Olson* of counsel), for New York State Department of Health and another, appellants-respondents.

*Tobin & Dempf* (*Michael L. Costello, David A. Ruffo* and *Kevin A. Luibrand* of counsel), for respondents-appellants.

*Pattison, Sampson, Ginsberg & Griffin, P.C.* (*Gerald H. Katzman* of counsel), for intervenor-appellant.

*Madeline Kochen* for New York Civil Liberties Union and another, *amici curiae.*

*Anne E. Simon* for Center for Constitutional Rights, *amicus curiae.*

*Nadine Taub* for Women's Rights Litigation Clinic, *amicus curiae.*

*Hiscock & Barclay* (*Kenneth J. Connolly* of counsel), for Health Systems Agency of Northeastern New York, Inc., appellant-respondent.

## OPINION OF THE COURT

Per Curiam.

In June 1983, intervenor, Upper Hudson Planned Parenthood, Inc. (Planned Parenthood), applied to respondent New York State Department of Health (DOH) pursuant to Public Health Law § 2802 for approval of an expansion of its existing, licensed health clinics in the Cities of Albany and Hudson to enable them to provide nonhospital abortion services. Under both State law (Public Health Law § 2802) and Federal law (National Health Planning and Resources Development Act of 1974 [NHPRDA] [42 USC § 300k *et seq.*]), approval of the application entailed review under a certificate of need (CON) program to determine the public need for the proposal, the applicant's competence and the financial feasibility of the proposed service. A State's adherence to a CON program is a condition of receiving Federal financial assistance under NHPRDA (42 USC § 300m-1 [b] [5];

§ 300m-2 [a] [4] [B]; § 300m-6). New York has legislatively opted to participate in the Federal program (*see,* Public Health Law § 2802 [3-b]).

As required under the statutory scheme (Public Health Law § 2802 [2], [3-b]), Planned Parenthood's application was referred to respondent Health Systems Agency of Northeastern New York, Inc., which rendered its report recommending approval of the application in late July 1983. The application was processed by DOH under an abbreviated administrative review procedure rather than full review, as was permitted by departmental regulations (10 NYCRR 710.1 [b] [5]). DOH approved the application on December 20, 1983, but delayed issuing the amended operating certificate pending an on-site inspection of Planned Parenthood's Albany and Hudson facilities after the construction work necessary for the expansion was completed. During the interim period, the proposed project came to the attention of the news media and was the subject of considerable public interest. In response thereto, DOH decided to hold a public hearing to solicit information and to determine whether the approval of the application should be rescinded. The hearing was held on November 9, 1984, at which the various petitioners herein each appeared personally or through representatives.

Following the hearing on Planned Parenthood's proposal, DOH reaffirmed its initial approval. The instant CPLR article 78 proceeding was then commenced and Planned Parenthood was allowed to intervene. Special Term granted the petition, annulled DOH's determination approving Planned Parenthood's application and remitted the matter to DOH for reconsideration. In so ruling, Special Term held, *inter alia,* (1) that the individual petitioners had standing to challenge the determination, (2) that petitioners Roman Catholic Diocese of Albany, New York, and Catholic Charities of that Diocese did not have such standing, and (3) that the determination was invalid because it was based in "major part" upon an "unpublished department policy" that a public need for non-hospital-based abortion services exists whenever less than 50% of all abortion services are available on an out-of-hospital basis (the so-called "50% rule"). These cross appeals ensued.

Regarding the threshold question of standing, we have concluded that each of the petitioners had the right to seek judicial review of DOH's determination under NHPRDA and the companion Federal regulations. Having opted to participate in and receive the financial benefit of the CON program under the Federal act, New York is bound by the provisions thereof insofar

as they mandate access to an appropriate State court for the purpose of challenging a State health agency's decision on need. We are unpersuaded by Planned Parenthood's contention that NHPRDA does not apply to its application because the expansion of services does not entail costs meeting the statutory minimum dollar amounts for new "institutional health services" or "capital expenditure[s]" (42 USC § 300n [5], [6]), each of which triggers mandatory CON review under the Federal statute. The statutory phrase "capital expenditures" is alternatively defined under NHPRDA as one which "substantially changed the services of such facility" (42 USC § 300n [6] [B] [ii] [III]), and the correlative Federal regulation is consistent in providing that CON review is required for a capital expenditure, irrespective of cost, when it includes the addition to an existing facility of a health service not offered within the previous 12 months (42 CFR 123.401, 123.404 [a] [3]). It cannot seriously be contended that adding out-patient abortion services to Planned Parenthood's clinical service is not such a new "health service", thereby making applicable all of the mandatory procedures under the Federal CON program.

The judicial review section of NHPRDA (42 USC § 300n-1 [b] [12] [E]) provides in pertinent part: "Any person *adversely affected* by a final decision of a State Agency with respect to a certificate of need * * * and a health systems agency if the decision * * * is inconsistent with a recommendation made by the agency to the State Agency * * * may * * * obtain judicial review of it in an appropriate State court" (emphasis supplied). A "person adversely affected" is not defined in the Federal act. However, the Federal regulations in effect at the time of the initiation of this proceeding defined the phrase as including any person residing within the geographical area to be served under the application, or who regularly uses health care services within that area, or who participated in the proceeding before the State agency (42 CFR 123.401, 123.410 [14]). This expansive conferral of standing conforms to the relevant legislative history, wherein the persons authorized to seek judicial review of a State CON determination are described in virtually identical language (*see,* Sen Rep No. 96-96, 96th Cong, 1st Sess, reprinted in 1979 US Code Cong & Admin News, at 1306, 1377). Although the House of Representatives passed a different bill from that enacted by the Senate, reconciliation of the two bills by the House-Senate Conference Committee resulted in a judicial review provision which "conforms to the Senate bill except that it requires judicial review to be limited to certificate of need decisions" (HR Conf Rep No. 96-420, 96th Cong, 1st Sess, re-

printed in 1979 US Code Cong & Admin News, at 1422, 1445). Therefore, the legislative history of the Senate bill continues to be germane in ascertaining congressional intent on the question of standing. Since the Federal regulation in effect at the time of the commencement of this proceeding is not in conflict with the NHPRDA section on standing and is not challenged as beyond the scope of the regulatory authority of the Secretary of Health and Human Services, it should be controlling over any State restriction on access to the courts by persons having a Federal right to review State agency CON decisions (*see, Lewis v Martin,* 397 US 552, 556-559; *Matter of Marino v Town of Ramapo,* 68 Misc 2d 44, 58; *Matter of Du Pont de Nemours & Co. v Board of Stds. & Appeals,* 5 Misc 2d 100, 102, *affd* 5 AD2d 811; *see also, Matter of Chambery v Axelrod,* 101 AD2d 610, 611).

It is true, as Planned Parenthood and DOH point out, that amendments to the Federal regulations were adopted in January 1985, effective February 13, 1985, which eliminated the foregoing express provisions on standing and substituted a general direction requiring each State to adopt consistent judicial review procedures (50 Fed Reg 2008, 2018). However, there is nothing to indicate that the deletion was intended to restrict standing to obtain judicial review of CON decisions or that, in any event, it was designed to apply retroactively to already pending judicial review proceedings in which a party had valid standing when the proceeding was commenced. Therefore, the amendment to the Federal regulation should not be applied to undo standing already validly acquired (*see, Simonson v International Bank,* 14 NY2d 281, 289-290; *Shielcrawt v Moffett,* 294 NY 180, 189-190; *cf. Matter of Asman v Ambach,* 64 NY2d 989; *Matter of Consolidated Edison Co. v State Bd. of Equalization & Assessment,* 103 AD2d 453).

It follows from the foregoing that since each of the petitioners was either a resident of the geographical area affected by Planned Parenthood's application or participated personally or through a representative in the administrative proceeding, each has a Federally created right to seek judicial review and, thus, has statutory standing. In reaching this conclusion, we reject DOH's and Planned Parenthood's contention that Congress had no constitutional right to enlarge the jurisdiction of New York courts by conferring standing where it would not exist under New York law (citing, *inter alia, Matter of Dairylea Coop. v Walkley,* 38 NY2d 6). The New York cases cited by DOH address the standing issue in situations where there was no explicit statutory authorization to sue. Moreover, in enunciating State procedural principles on standing, the Court of Appeals has

expressly adopted modern Federal decisional law (*Matter of Dairylea Coop. v Walkley, supra,* pp 9-11). Under Federal statutory standing doctrine, once a justiciable controversy exists, which is surely the case here, standing is a question within the constitutional power of Congress to determine (*Sierra Club v Morton,* 405 US 727, 732, n 3). In view of our holding herein, that each petitioner has statutory standing under NHPRDA, we need not resolve whether Special Term's alternative grounds for finding standing were also correct.

█ Turning to the merits, Special Term annulled the determination upon the ground that DOH impermissibly relied upon a rigid numerical policy (the 50% rule) not found in any statute or regulation. We affirm.

When a State agency bases its determination upon a fixed standard, "such a policy establishes a general course of operation to be effective for the future and, accordingly, comes within the rule or regulation filing requirement of the Constitution" (*Long Is. Coll. Hosp. v Whalen,* 68 AD2d 274, 276; *see also, Matter of Aurelia Osborn Fox Mem. Hosp. v Axelrod,* 103 AD2d 509, 510-511; *Matter of Sturman v Ingraham,* 52 AD2d 882, 884-885). The agency may, of course, elect to proceed on a case-by-case analysis of the facts and circumstances surrounding the particular issues to be determined (*see, Village of Herkimer v Axelrod,* 88 AD2d 704, 706, *affd* 58 NY2d 1069), but the record in this case leaves no room for doubt that DOH employed a fixed standard — a rigid numerical formula. The record also leaves little room for doubt that the 50% rule formed at least a significant component of the basis for the determination. For example, in discussing the 50% rule, DOH's determination makes reference to "[a] more important factor", "the other traditional criteria" and "the primary basis on which the application was initially considered approvable".

That several other factors, derived by the agency's analysis of the facts and circumstances of this case, can be said to form an integral part of the basis for the determination does not justify our ignoring the improper use of a fixed standard. These additional, rather than alternative, factors, standing alone, constitute a foundation for the determination comprised of components different than those actually relied upon by DOH, which also included the 50% rule. Having concluded that the grounds relied upon by DOH include an improper fixed standard, we cannot sustain the determination by substituting proper grounds which do not include the fixed standard (*Matter of Parkmed Assoc. v New York State Tax Commn.,* 60 NY2d 935,

936). Indeed, we cannot say that DOH would have reached the same result without considering the 50% rule, for to do so would be tantamount to substituting our judgment for that of the administrative agency.

Based upon the foregoing analysis, the judgment should be modified by reversing so much thereof as dismissed the Roman Catholic Diocese of Albany, New York, and Catholic Charities of the Diocese of Albany, New York, as petitioners, and affirmed in all other respects.

· LEVINE, J. (concurring in part and dissenting in part). While I agree fully with the majority's disposition of the standing issue, I respectfully dissent from its holding that respondent New York State Department of Health (DOH) violated NY Constitution, article IV, § 8 in its use of the "50% rule". This ruling, in my view, too broadly construes the constitutional requirement of filing an administrative rule or regulation, misreads the judicial precedent applying it, and will, I fear, create uncertainty in the field of administrative law where agencies announce or evolve guidelines to aid in making ad hoc decisions in performing their adjudicative function rather than their quasi-legislative, rule-making role.

A fair reading of the DOH decision of January 11, 1985, the sole determination under review, clearly shows that the 50% rule was neither the sole nor the determinative basis for the finding of public need for the proposed abortion clinic facilities of intervenor, Upper Hudson Planned Parenthood, Inc. (Planned Parenthood). First, the decision expressly eschewed application or even the existence of a "regulatory formula" to determine need. Second, various other factors were considered and weighed in deciding that a need exists; namely, (1) the policy (reflected in the State's formal health and medical facility plans) in favor of development of alternatives to institutional health care, (2) a projected needs analysis based upon current use ratios showing an over-all deficit in abortion services by 1990, (3) a trend, particularly in Albany County, of steadily increasing out-migration of county residents to seek abortion services in other localities, (4) a ratio of such out-migration to total abortions obtained by Albany County residents which was at least twice as high and as much as 25 times higher than that found in other major upstate population centers, (5) a ratio of the incidence of in-hospital to total abortion services from 5 to 9 times greater than that found in other upstate population centers, and (6) the special characteristics of Planned Parenthood's proposed abortion services, including greater confidentiality, continuity of

postabortion care, contraceptive education and more affordable fees. DOH's decision also included an analysis supporting its conclusion that the current trend of decreasing incidence of abortions performed in Albany County and the existence of other out-of-hospital providers, principally private physicians, do not demonstrate the absence of need for Planned Parenthood's proposed program, these being the two factors principally relied upon by opponents of the application.

Most, if not all, of the foregoing matters considered by DOH fall within the factors set forth in the regulations concerning its certificate of need review procedures (10 NYCRR 709.1). Thus, even if DOH may have found "particularly relevant" to its need determination that less than 50% of all abortion procedures in the subject area were performed out-of-hospital, the standard was not used as a "legislative or quasi-legislative norm or prescription which *establishes* a pattern or course of conduct for the future" (*People v Cull,* 10 NY2d 123, 126 [emphasis supplied]). Nor was it a "preset, rigid numerical policy * * * which foredoomed" the result without reference to the facts and merits of the application (*Matter of Sturman v Ingraham,* 52 AD2d 882, 885). It is only in such instances, i.e., where a fixed, general principle is applied by the administrative agency without regard to other facts and circumstances relevant to the underlying statutory regulatory scheme, that the agency can be said to have invoked its quasi-legislative, rule-making authority and, hence, to have become obliged to file the rule or regulation with the Secretary of State and apply it only prospectively. This was precisely the situation in each of the cases relied upon by Special Term and petitioners herein. A group of those cases involved Medicaid reimbursement disallowance of various, actually incurred nursing home expenses, based solely on a firm, unqualified policy adopted by the agency (*Matter of Cabrini Med. Center v Axelrod,* 105 AD2d 569, 570; *Matter of Aurelia Osborn Fox Mem. Hosp. v Axelrod,* 103 AD2d 509, 510-511; *Long Is. Coll. Hosp. v Whalen,* 68 AD2d 274, 276). In other cases, the agency disapproved new nursing home facility construction purely by a mechanical application of a numerical formula for calculating the need for additional nursing home beds in any given county (*Matter of Fairfield Nursing Home v Whalen,* 64 AD2d 802; *Matter of Sturman v Ingraham, supra*). In each of the remaining cases cited (*People v Cull, supra; Hartman v Whalen,* 75 AD2d 963), the administrator similarly adopted and applied a rigid, unvariable standard or procedure completely conclusive of the rights and remedies of the affected party.

Neither these decisions nor the State Constitution's regulation-filing requirement (NY Const, art IV, § 8) were intended to overturn the general principle of administrative law that an agency is free to evolve standards, if consistent with the statutory framework, on a case-by-case basis and to apply them to the individual proceeding at hand. "And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency" (*Securities Commn. v Chenery Corp.,* 332 US 194, 203). The Supreme Court, in *National Labor Relations Bd. v Bell Aerospace Co.* (416 US 267, 294) and *National Labor Relations Bd. v Wyman-Gordon Co.* (394 US 759, 765-766), expanded on its *Chenery* ruling in upholding an administrator's right to formulate, announce and apply policy guidelines in the course of adjudicating individual cases without going through the Federal Administrative Procedure Act's rule-making procedures (5 USC § 551 [4]; § 553) comparable to our State constitutional provision (*see also,* Davis, Administrative Law, at 186 [1982 Supp]). New York case law, up to now, has not been inconsistent with these general principles of administrative law in ruling that an administrative agency does not violate the regulation-filing requirement by "establishing a guideline for a case-by-case analysis of the facts" (*Long Is. Coll. Hosp. v Whalen,* 68 AD2d 274, 276, *supra; see also, Matter of Organization to Assure Servs. for Exceptional Students v Ambach,* 56 NY2d 518).

Since, in its January 11, 1985 decision, DOH employed the 50% rule as nothing more than a nonconclusive, nonbinding guideline to be weighed along with other factors on the public need issue in adjudicating individual cases, there was no need to file it as a regulation.

Finally, the majority apparently concludes that the additional factors, other than the 50% rule, upon which DOH based its finding of public need, would have been sufficient to support that determination. With this I agree, since the decision shows a weighing of factual data and balancing of competing factors within the sole province of the administrative agency. Since the additional rationale for finding public need was both sufficient and expressly made part of DOH's decision, upholding that determination would not violate *Matter of Parkmed Assoc. v New York State Tax Commn.* (60 NY2d 935), wherein the Court of Appeals disapproved this court's confirmation of an administrative ruling on a ground never invoked by the agency.

For all of the foregoing reasons, I vote to reverse the judgment of Special Term, confirm the determination of public need and dismiss the petition.

MAHONEY, P. J., CASEY and WEISS, JJ., concur; LEVINE, J., concurs in part and dissents in part in an opinion.

Judgment modified, on the law, without costs, by deleting the last decretal paragraph thereof, and, as so modified, affirmed.