■ In the Matter of MEADOWBROOK NURSING HOME, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants.—Yesawich, Jr., J. Appeal from a judgment of the Supreme Court at Special Term (Dier, J.), entered March 21, 1985 in Clinton County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Commissioner of Health denying petitioner's application to expand its facility.

Petitioner, Meadowbrook Nursing Home (Meadowbrook), operates a 120-bed residential health-care facility in Clinton County. In December 1980, the facility applied to respondent Commissioner of Health (Commissioner) for approval of its plan to construct additional skilled nursing facility and health-related beds. Coincidentally, Uihlein Mercy Center, Inc. (Uihlein), a nursing home located in Essex County, also sought permission to expand. Pursuant to Public Health Law § 2802, approval of a proposed nursing home addition is conditioned upon a determination by the Commissioner that a public need for the expansion exists. For purposes of determining nursing home needs, Meadowbrook and Uihlein were initially in the same tricounty health services planning area.

In March 1984, the Commissioner denied Meadowbrook's application and indorsed Uihlein's. Meadowbrook, proceeding by way of CPLR article 78, succeeded in having that decision annulled and an order was issued directing the Commissioner to hold a new hearing to determine the public need for the

proposed construction and the financial feasibility of each plan. The court also acceded to Meadowbrook's request to enjoin Uihlein from commencing construction pending the result of those proceedings.

Hearings, limited in scope by the Administrative Law Judge (ALJ) to the issue of need, were then conducted. The State Health Department's sole witness testified that employing the procedures set forth in 10 NYCRR 709.1 and 709.3 indicated no need for any of the proposed construction. Meadowbrook produced six witnesses, all health care professionals, who testified to the actual need for additional nursing home beds in Clinton County. The ALJ denied both applications on the ground that he was "bound by the provisions of 10 NYCRR 709 in determining need. To make a determination concerning need methodology outside the provisions of 10 NYCRR 709 is beyond the Administrative Law Judge's scope of authority."

The Commissioner adopted the ALJ's recommendation and Meadowbrook then initiated the within CPLR article 78 proceeding. Special Term concluded that the Commissioner's acceptance of the ALJ's inflexible adherence to the mathematical needs formula was, as alleged, arbitrary and capricious and granted the petition, but stated that the record did not entitle petitioner to any affirmative relief. Nevertheless, the court ordered the matter remitted solely to assess petitioner's financial feasibility. This appeal ensued.

It is not disputed by the Commissioner that his determination rests entirely on the outcome of the needs test as calculated pursuant to 10 NYCRR 709.3. That methodology is, however, intended merely to guide and direct the development of long-term care services while providing "the health systems agencies and potential applicants with sufficient flexibility to consider the unique and special characteristics of their respective areas in determining bed need" (10 NYCRR 709.3 [a]). In *Matter of Fairfield Nursing Home v Whalen* (64 AD2d 802) and *Matter of Sturman v Ingraham* (52 AD2d 882), reliance on a nonstatutory needs test that was preset, rigid and nothing more than a numerical policy was condemned as arbitrary and unfair. Such a narrow procedure forecloses consideration of a wide variety of relevant factors, preordains the decision to be reached on each application and renders the hearing assured by Public Health Law § 2802 (5) nugatory. Those cases, which are virtually indistinguishable from the case at bar, are controlling.

Also, it is worth noting that, unlike *Matter of Baird v*

*Axelrod* (102 AD2d 972), on which the Commissioner relies, Meadowbrook has not challenged the formula employed, but rather the State Health Department's failure to consider concrete and clearly relevant additional factors not encompassed within the formula. The facility's witnesses cited the patient backlog awaiting openings in nursing homes, the large number of residents who had to seek placement outside of the area due to the lack of available beds in Clinton County, the shortage there of alternate care facilities, and the County's inadaptability to alternatives to nursing home care and the financial burden—over $600,000 annually—due to inadequate nursing home space. Failure to heed elements of this nature was improper and warranted annulment of the Commissioner's decision denying Meadowbrook's application due to lack of need.

It does not necessarily follow, however, that need has been established. That determination, to be based on all relevant factors, nonetheless rests within the special expertise of the Commissioner in the first instance. As stated in *Matter of Sturman v Ingraham (supra,* p 885, quoting *Matter of Swalbach v State Liq. Auth.,* 7 NY2d 518, 526-527), " 'despite the fact that the present record does not justify refusal of the petitioner's application * * * it is more in accord with the legislative design to remit the matter to the [Commissioner] so that [he] may reconsider the application on its particular facts' ".

Judgment modified, on the law, without costs, by directing that the matter be remitted to respondent Commissioner of Health to make a determination as to the need for the additional beds sought by petitioner as well as petitioner's financial feasibility, and, as so modified, affirmed. Mahoney, P. J., Main, Casey, Mikoll and Yesawich, Jr., JJ., concur.