In the Matter of STUYVESANT POLYCLINIC, Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, May 8, 1986

### APPEARANCES OF COUNSEL

*Akin, Gump, Strauss, Hauer & Feld (Harry R. Silver, David H. Eisenstat, P. C.,* and *Jorge Lopez, Jr.,* of counsel), and *Bond, Schoeneck & King (David R. Sheridan* of counsel), for appellant.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

### OPINION OF THE COURT

HARVEY, J.

Petitioner operates a free-standing ambulatory care facility in New York City. Prior to 1977, petitioner had never sought Medicaid reimbursement and, hence, had never filed a Medicaid cost report pursuant to 10 NYCRR 86-1.3. In 1977, petitioner's directors apparently decided to apply for Medicaid reimbursement, and the first full year for which a cost report was filed was 1978. In order to set a target rate of reimbursement for petitioner, a budget was prepared and submitted to the Bureau of Health Care Reimbursement, and a rate of reimbursement was set based on the proposed budget. This rate was subject to an audit by the Department of Health in order to determine a rate "based upon actual allowable costs incurred during the rate period" (10 NYCRR 86-1.19 [d]). Such an audit was conducted, and the audited rate superseded the rate based on the proposed budget. The audited rate remained in effect until March 1981, when it was superseded by a rate based upon petitioner's 1978 cost report.

Petitioner challenged the audited rate claiming, *inter alia,* that the Department's auditors improperly determined the rate of reimbursement. The rate was determined by dividing petitioner's adjusted expenses of $122,572 by the number of "imputed" patient visits of 4,704, for a rate of reimbursement of $26.06. "Imputed" patient visits are the number of patient visits that respondents maintain petitioner should have received, given the number of full-time physicians on petitioner's staff. The 4,704 figure for imputed patient visits was arrived at by multiplying the number of petitioner's full-time physicians (1.12) by a set number of 4,200, which the Department had determined was "the acceptable minimum guidelines used by the State of New York in establishing new rates". Petitioner contends that its reimbursement rate should have been based on actual patient visits, in which case petitioner's rate of reimbursement would have been $55.87.

Petitioner filed a rate appeal and, in February 1985, the Department determined that no adjustments to the audit reports were in order. This CPLR article 78 proceeding followed. Special Term dismissed the petition, and this appeal ensued.

Initially, we note that the Department's auditors were not required simply to accept the actual number of patient visits to petitioner as a basis for determining its rate of reimbursement. Public Health Law § 2807 (3) requires the Commissioner of Health to determine "that the proposed rate schedules for payments to hospitals for hospital and health-related services are reasonable and adequate to meet the costs which must be incurred by *efficiently* and *economically* operated facilities" (emphasis supplied). Further, Public Health Law § 2807 (5) requires the Commissioner to make available the documentation necessary to conduct an audit in order to implement the statute's provisions. Accordingly, reimbursement rates must be reasonably related to costs incurred by an efficiently operating facility *(see, Fishkill Health Related Facility v Whalen,* 95 AD2d 974, 975; *Matter of Glengariff Corp. v Axelrod,* 93 AD2d 900, 901), and the Department's auditors may determine what would constitute a facility's efficient operation. Under this statutory authority, the Department's auditors could properly determine that, given the number of petitioner's full-time physicians, petitioner should have had a higher number of patient visits in order to be considered to have operated efficiently, and petitioner's reimbursement rate could have been computed in accordance with that higher number.

We find, however, that the facts reveal that the utilization of the number 4,200 as the minimum acceptable guideline for the number of visits to a physician per year constituted the use of a rule which had not been properly filed in the office of the Department of State. It is a well-established principle of administrative law that "an administrative agency does not violate the regulation-filing requirement by 'establishing a guideline for a case-by-case analysis of the facts' " *(Matter of Roman Catholic Diocese v New York State Dept. of Health,* 109 AD2d 140, 148 [Levine, J., dissenting in part], *revd on dissenting opn below* 66 NY2d 948, quoting *Long Is. Coll. Hosp. v Whalen,* 68 AD2d 274, 276). However, a fixed standard which is applied without regard to other relevant facts and circumstances constitutes a rule or regulation which must be filed with the Department of State to be valid (NY Const, art IV, § 8; *Matter of Roman Catholic Diocese v New York State*

*Dept. of Health,* 66 NY2d 948, 951; *Long Is. Coll. Hosp. v Whalen, supra,* p 276).

Here, the Department's audit report of petitioner described the 4,200 patient-visit standard as "the acceptable minimum guidelines used by the State of New York in establishing new rates". Furthermore, an affidavit by Paul M. Tenan, Director of the Bureau of Ambulatory Care Reimbursement, states that: "The 4200 visit per full time equivalent figure utilized by the Department was the same as that utilized by the federal government * * * In fact, the Department utilizes the low end of this efficiency indicator which states that each equivalent physician should encounter between 4200 and 6000 visits per year." The only rational interpretation of these statements and the other pertinent evidence in the record is that the 4,200 patient-visit standard is a fixed principle which is regularly applied by the Department, without reference to other facts and circumstances, in cases where new reimbursement rates are established. At oral argument, respondents admitted that Special Term's decision to the contrary was in error. Having concluded that the standard upon which the Department premised its determination is an invalid rule, respondents' determination must be annulled.

Main, J. P., Casey, Weiss and Levine, JJ., concur.

Judgment reversed, on the law, with costs, determination annulled, and matter remitted to respondents for further proceedings not inconsistent herewith.