[837 NYS2d 626]

In the Matter of 9TH & 10TH STREET L.L.C., Appellant, v BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK, Respondent.

First Department, May 29, 2007

APPEARANCES OF COUNSEL

*Anderson Kill & Olick, P.C.,* New York City (*Jeffrey E. Glen, Steven Cooper* and *Gail Eckstein* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Cheryl Payer, Stephen J. McGrath* and *Virginia Waters* of counsel), for respondent.

**OPINION OF THE COURT**

CATTERSON, J.

In this CPLR article 78 proceeding, the Department of Buildings' (DOB) denial of a building permit to the petitioner on the grounds that petitioner could not produce documentation of eventual institutional control over a proposed dormitory building constituted an impermissible administrative anticipatory punishment.

On July 20, 1998, the petitioner acquired block 392, lot 10 (known both as 605 East 9th Street and as 350 East 10th Street) from the City of New York through public auction for $3,150,000. The deed contains the following restriction: "Use and development of this . . . property is . . . limited to a 'Community Facility Use' as defined in the New York City Zoning Resolution as existing on the date of the auction." It is uncontroverted that as of the date of the auction, community facilities under the Zoning Resolution included college and school dormitories.

On October 19, 2004, the petitioner filed an application with DOB for a 19-story building to be used as a college or school dormitory. On November 29, 2004, DOB issued an objection sheet; objection No. 4 said, "substantiate dormitory use (UG 3)." After repeated negotiations, DOB refused to reconsider the objection, stating:

> "the Department requires an institutional nexus in order for construction to be classified as a dormitory. This is necessary to distinguish a 'student

dormitory' which is . . . entitled to extra floor area, from other types of housing that are classified as Use Group 2, including buildings that house students, and that are not eligible for additional bulk. To reflect the nexus, the Department asks for either a deed or a lease from a school . . .

"Although the premises is [*sic*] subject to a deed restriction that would prohibit residential use, this is not sufficient to establish its use as a dormitory. Where two uses appear very similar on plan, yet result in very different zoning benefits (such as the Use Group 2 residences and Use Group 3 dormitory), it is incumbent upon the Department to ask for documentation to substantiate the particular community facility use . . . [T]he deed restriction . . . is not sufficient to justify deviating from the Department's general requirement that a dormitory use be substantiated prior to permit . . . ."

The petitioner subsequently informed DOB that it would lease the building for a minimum of 10 years to University House Corp., a nonprofit entity, whose purpose was to provide affordable dormitory housing to college and university students and faculty.

One of University House Corp.'s three directors was the Director of Housing and Residential Life at Pace University; the others were a lawyer and an accountant with no apparent link to a college or school.

DOB responded:

"While you state that the premises will be leased . . . you have failed to provide a lease . . . It is not sufficient that you intend to enter into a lease with a qualifying entity, or that you intend to enter into a restrictive declaration that would meet the Department's requirements. Until a satisfactory lease is submitted together with the restrictive declaration, the Department cannot issue a permit for a Use Group 3 dormitory use.

"In addition, the documentation that you attached regarding the establishment of University Housing [*sic*] Corporation does not require the board members of the non-profit entity to consist of each of the participating educational institutions, as is our intent . . .

"To the extent that the non-profit entity currently lacks control of the premises, you have not established that the premises is [*sic*] a dormitory. Unlike most other uses that can be established by any party, a dormitory use can only be established by controlling educational institutions."

The petitioner then offered to prepare a lease and restrictive declaration, submit them to DOB for comment, and prepare documents providing that, prior to occupancy of the premises, the board of directors of University House Corp. would consist solely of persons appointed by participating educational institutions.

DOB again rejected the petitioner's offer. DOB characterized the offer as: "a speculative arrangement upon which the Department cannot rely, given that in the event there are no educational institutions willing to assume control of the premises, the building will have impermissibly exceeded the bulk allowable for its residential configuration."

At the same time that the petitioner and DOB were exchanging letters, DOB promulgated a new rule setting forth requirements for dormitories.

The petitioner then appealed to the respondent from DOB's refusal to lift objection No. 4. The Department of City Planning (hereinafter referred to as DCP) submitted a letter in opposition to the appeal, stating:

"This requirement for an institutional nexus between the residence and a college or other school was recognized by the City Planning Commission in a [July 28, 2004] report regarding text amendments to the community facility provisions of the Zoning Resolution. The Commission's report reads, in pertinent part, as follows:

'The proposal adds language clarifying that college and school dormitories or fraternity and sorority houses are accommodations provided **by the educational institution** for its students.' . . .

"Although the primary focus of the subject text change with respect to dormitories was to affirm that they must be occupied by students rather than non-students or faculty, it was clearly understood by the Commission that an educational institution must provide the facility."

During the hearing before the respondent, the petitioner's representative maintained, inter alia, that University House Corp. would provide "housing to students in groups or singly."

The respondent denied the petitioner's appeal, holding that: "(1) DOB's interpretation of the subject ZR provision is correct; and (2) its refusal to lift the Objection for failure to submit documentary evidence of institutional control over the Proposed Dormitory . . . is an appropriate exercise of its authority." The respondent agreed with DOB that the phrase "college or school . . . dormitory" was not defined in the Zoning Resolution and that it was appropriate for DOB to interpret that phrase. The respondent also agreed with DCP's letter.

The respondent noted that community facility uses "are presumed to have a benefit for the neighborhood in which they are situated"; that is why they are entitled to additional bulk. A building that accepted students from any school "negat[ed] the presumed beneficial effect for a specific community-based educational institution and thus for the community as a whole."

The petitioner thereupon commenced the instant article 78 proceeding. Supreme Court denied the petition and dismissed the proceeding, pointing out that the respondent's interpretation of the Zoning Resolution was entitled to deference. The court also found that it was "reasonable for DOB to articulate criteria to differentiate UG2 residences that simply target a student rental market from UG3 college or school student dormitories." (12 Misc 3d 1183[A], 2006 NY Slip Op 51392[U], *4.)

The court also found that DOB could require proof at the permit stage instead of waiting until the certificate of occupancy stage. It noted, "[o]nce erected, the building cannot be unbuilt (without great expense), and its impact on the neighborhood cannot be undone. Students residing in the building may be forced to relocate at an inopportune time if the building's certificate of occupancy is later revoked." (2006 NY Slip Op 51392[U], *5.)

There is no question that the interpretations of the zoning regulations by DOB and the respondent are entitled to deference. However, the inquiry into decisions flowing from that interpretation is nonetheless whether they are arbitrary and capricious or irrational. (*Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.*, 91 NY2d 413, 418-419 [1998].)

The Second Department decision in *Matter of Di Milia v Bennett* (149 AD2d 592 [1989], *lv denied* 74 NY2d 610 [1989]) is instructive, as it is similar to the instant case. In *Di Milia*, DOB approved plans for the construction of a single-family residence. The developer sought to amend the plans by adding a full bathroom, a private entrance, and by dividing a large room into two on the first floor of the contemplated dwelling. The amendment was denied on the ground that the proposed building could be readily converted into a two-family dwelling, a form of occupancy not allowable under the applicable zoning rules. The BSA affirmed, finding that:

> "[I]t is the interpretation of the Department of Buildings that the applicant's plans indicate a design and arrangement *capable of* accommodating more than a single-family and that such plans represent an attempt to circumvent the requirements of the zoning resolution; and . . . such interpretation reflects a rational and reasonable determination within the competence of the Department and within its statutory authority . . . ." (Emphasis added.)

The motion court, however, annulled the BSA determination stating that "to prohibit the houses based on *a possible future illegal use* was arbitrary and capricious." The Second Department affirmed, holding that "[t]he standard to be applied . . . is the actual use of the building in question, not its possible future use." (149 AD2d at 593.) Just as in the instant case, no structure had been erected when the Court ruled in *Di Milia*. The "actual use" referred to was the "actual use" as set forth in the application for the building permit.

Petitioner correctly asserts that *Di Milia* exemplifies the clear and consistent law of New York forbidding administrative anticipatory punishment. Thirty years ago, Justice Shapiro, writing a dissent in *Matter of Baskin v Zoning Bd. of Appeals of Town of Ramapo* (48 AD2d 667, 668 [1975]), condemned reliance on the "mere evanescent possibility of future violation." As he explained:

> "It is clear that the existence of a mere opportunity for future evasion or violation of law does not raise a presumption that such violation in fact actually presently exists . . . . The standard, therefore, is not designed or potential use, but actual use. If, in

fact, [the planned structure] is to be barred because it might, at some future time, possibly be used by later owners or occupants for a use which violates the existing one-family limitation, the effect would be to visit on the present lawful users and occupiers of the home anticipatory punishment for future wrongdoing by another, a concept contrary to the basic principles of Anglo-Saxon law." (*Id*. at 668-669.)

The Court of Appeals agreed with the dissent and reversed the Second Department so as to permit construction of a single-family house containing two kitchens regardless of the possibility that the structure might at some point be converted to a nonconforming two-family residence. (40 NY2d 942 [1976]; *see also Matter of Association of Friends of Sagaponack v Zoning Bd. of Appeals of Town of Southampton*, 287 AD2d 620,621 [2001] ["ZBA properly rejected the petitioners' speculative claims that the (40,000 square foot) residence was destined for use other than as a single-family residence, as the standard 'is not designed or potential use, but actual use' " (quoting *Baskin, supra* at 669)]; *see also Matter of Pateman v Marra*, 138 Misc 2d 807 [Sup Ct, Westchester County 1988, Colabella, J.].)

Similarly, in *Matter of Kam Hampton I Realty Corp. v Board of Zoning Appeals of Vil. of E. Hampton* (273 AD2d 385 [2000]), the Second Department was called upon to adjudicate a dispute between Martha Stewart and her neighbors over a permit for the construction of a home office, library, and gym. Citing *Di Milia (supra)*, the Court held that the neighbors' "claim that the design of the structures indicate that they would be used for dwelling purposes is based on pure speculation." (*Id*. at 387.) Furthermore, "the law does not permit [the ZBA] to speculate that a permit applicant will use a structure for purposes not permitted by the village's code." (*Id.*)

The respondent's remedy for any attempt to use the building for an impermissible purpose is either denial or revocation of the certificate of occupancy. Furthermore, an action can be brought on behalf of the respondent or the City to enforce the acknowledged deed restriction.

Accordingly, the judgment of the Supreme Court, New York County (Michael D. Stallman, J.), entered on or about July 24, 2006, which denied the petition to annul respondent's determination upholding the Department of Buildings' objection No. 4

to petitioner's proposed building, should be reversed, on the law, without costs, the petition granted to the extent of annulling the determination, and the matter remanded for further administrative action.

WILLIAMS, J. (dissenting). While the requirements the Department of Buildings (DOB) imposed on petitioner may seem more like "a fixed, general principle" (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]) than "ad hoc decision making" (*Matter of Alca Indus. v Delaney*, 92 NY2d 775, 778 [1999]), DOB's options were not limited to rulemaking (*see e.g. Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 109 AD2d 140, 148 [1985, Levine, J., dissenting in part], *revd* 66 NY2d 948 [1985], *supra; see also NLRB v Bell Aerospace Co.*, 416 US 267, 294 [1974]; *SEC v Chenery Corp.*, 332 US 194, 199-203 [1947]).

DOB's and respondent's interpretations of the Zoning Resolution are entitled to deference (*see e.g. Appelbaum v Deutsch*, 66 NY2d 975, 977 [1985]; *Koultukis v Phillips*, 285 AD2d 433, 436 [2001]). "It matters not whether, in close cases, a court would have, or should have, decided the matter differently" (*Matter of Cowan v Kern*, 41 NY2d 591, 599 [1977]). Under these standards, this Court is constrained to find that respondent's determination was neither arbitrary and capricious, nor irrational. Indeed, the DOB and respondent acted rationally in view of past enforcement difficulties with later (certificate of occupancy stage) submission of proof of current nexus with an educational institution, and in view of petitioner's dubious and persistent efforts to evade preconstruction permit submission of such proof in favor of delaying compliance until the latter stages of the project.

Like the IAS court, I find *Matter of Di Milia v Bennett* (149 AD2d 592 [1989], *lv denied* 74 NY2d 610 [1989]) distinguishable because the issue in the instant proceeding is "whether petitioner has met the criteria for a college or school student dormitory use in the first instance" (12 Misc 3d 1183[A], 2006 NY Slip Op 51392[U], *5), not whether it will use the building illegally in the future.

Accordingly, I would affirm the judgment dismissing this proceeding seeking to annul respondent's determination upholding the Department of Buildings' objection No. 4 to petitioner's proposed building.

MARLOW and GONZALEZ, JJ., concur with CATTERSON, J.; TOM, J.P., and WILLIAMS, J., dissent in a separate opinion by WILLIAMS, J.

Judgment, Supreme Court, New York County, entered on or about July 24, 2006, reversed, on the law, without costs, the petition granted to the extent of annulling respondent's determination upholding an objection of the Department of Buildings to petitioner's proposed building, and the matter remanded for further administrative action.