10 N.Y.3d 264 (2008)
885 N.E.2d 881
856 N.Y.S.2d 28
In the Matter of 9TH & 10TH STREET L.L.C., Appellant,
v.
BOARD OF STANDARDS AND APPEALS OF THE CITY OF NEW YORK, Appellant.
Court of Appeals of the State of New York.
Argued February 13, 2008.
Decided March 25, 2008.
*265 Michael A. Cardozo, Corporation Counsel, New York City (Stephen J. McGrath, Virginia Waters and Cheryl Payer of counsel), for appellant.
Anderson Kill & Olick, P.C., New York City (Steven Cooper, Jeffrey E. Glen and Gail M. Eckstein of counsel), for respondent.
*266 Katie Kendall, New York City, Vicki Been and Michael Gruen for Municipal Art Society of New York, Inc., amicus curiae.
The Plunkett & Jaffe Group of McKenna Long & Aldridge LLP, New York City (William F. Plunkett Jr., Charles E. Dorkey III and Timothy J. Plunkett of counsel), for Defenders of the Historic Upper East Side and others, amici curiae.
*267 Stroock & Stroock & Lavan LLP, New York City (Ross F. Moskowitz and Claude G. Szyfer of counsel), for Real Estate Board of New York, Inc., amicus curiae.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

OPINION OF THE COURT
SMITH, J.
Petitioner sought a building permit to construct a dormitory. The New York City Department of Buildings denied the permit on the ground that petitioner had not shown it could actually use the building as a dormitory, and that if it did not do so the result would be either an illegal use or a vacant building. We hold that the Department's action was not arbitrary and capricious. Where there is reason to doubt that a proposed structure can be used for a lawful purpose, municipal authorities are not required to let the property owner build the building and see what happens.

Facts and Procedural History
Petitioner acquired from New York City a lot on East 9th Street in Manhattan, occupied by a former school building. The deed under which petitioner took title restricts development of the property to "a `Community Facility Use' as such use is defined in the New York City Zoning Resolution." That Zoning Resolution lists several permitted uses; the one relevant here is "[c]ollege or school student dormitories" (Zoning Resolution § 22-13).
After several years, petitioner submitted to the New York City Department of Buildings an application to build a 19 story dormitory on the propertya dormitory that, as proposed by petitioner, would be configured much like an ordinary apartment building. A dormitory was allowed by the applicable zoning, *268 as well as by the deed. However, if the proposed structure turned out to be an ordinary apartment building, it would violate both the deed and the zoning laws. Apartment buildings were lawful in the zoning district where the property was located, but such buildings were treated less favorably than dormitories and other "community facilities"; an apartment building on petitioner's site would have been limited to 10 stories.
The Department took the position, which petitioner does not now contest, that a "[c]ollege or school student dormitor[y]" within the meaning of the Zoning Resolution is not just a building in which the apartments are rented to students. Under the Department's interpretation, a building qualifies as a dormitory only if it is operated by, or on behalf of, at least one college or school. Thus, the Department asked petitioner to "substantiate" the proposed dormitory use by showing an "institutional nexus"a connection with an educational institution sufficient to persuade the Department that the building, when built, really would be a dormitory.[*]
Petitioner tried unsuccessfully to satisfy the Department's request for proof of a "nexus" with a college or school. Petitioner committed itself to lease the property for at least 10 years to University House Corp. (UHC)an entity created, apparently by petitioner's lawyers, around the time of the application for the building permit. Petitioner promised the Department that UHC's board of directors would consist solely of people appointed by "participating educational institutions" and that the building would be operated as a dormitory for college or school students. It did not, however, identify any educational institution that had committed itself to use the building as a dormitory for its students, or had even expressed an interest in doing so.
The Department refused to approve petitioner's application for a building permit, and the Board of Standards and Appeals (BSA) denied petitioner's appeal from that refusal. Petitioner brought this CPLR article 78 proceeding to annul the BSA's determination. Supreme Court denied relief and dismissed the proceeding, but the Appellate Division reversed, with two Justices *269 dissenting. The Appellate Division relied on Matter of Di Milia v Bennett (149 AD2d 592 [2d Dept 1989]) and Matter of Baskin v Zoning Bd. of Appeals of Town of Ramapo (40 NY2d 942 [1976], revg, on dissenting mem of Shapiro, J., 48 AD2d 667 [2d Dept 1975]), which it read as holding that a building permit could not be denied on the basis of "a possible future illegal use" (43 AD3d 36, 41 [2007] [emphasis omitted]). In the view of the Appellate Division majority, the Department's refusal to issue a building permit to petitioner was "an impermissible administrative anticipatory punishment" (id. at 37). If the building was not ultimately used as a dormitory, the Appellate Division held, the City's remedy was "either denial or revocation of the certificate of occupancy" or an action to enforce the restriction in the deed (id. at 42).
The BSA appealed to us as of right pursuant to CPLR 5601 (a), and we now reverse.

Discussion
Petitioner relies, as did the Appellate Division majority, on Di Milia and Baskin for the proposition that a building permit cannot be withheld because of concern that the proposed building will be used illegally. Petitioner reads Di Milia and Baskin too broadly. Both cases hold that the mere possibility of a future illegal use is not an adequate reason for withholding a building permit. But where, as here, officials reasonably fear that the legal use proposed for a building will prove impracticable, it is not improper to insist on a showing that the applicant can actually do what it says it will do.
In both Di Milia and Baskin, municipal authorities denied permits to construct one-family dwellings, because they feared that the houses might be converted to illegal two-family dwellings. Nothing in either opinion, however, suggests that one-family use was unlikely or impractical. On the contrary, Justice Shapiro's dissent in Baskin, which we adopted, says that "the residence will concededly be occupied by . . . one family" (48 AD2d at 668-669). At least in Baskin, the municipality's concern was that, because of the design of the home, it might, after being occupied by one family for some time, easily be occupied, illegally, by two. From the terse opinion in Di Milia, it appears that the concern there was similar. In each case, the court held that this possibility of "future illegal use" (Di Milia, 149 AD2d at 593) was not a valid reason for withholding a building permit.
Di Milia and Baskin would be applicable here if it were clear that petitioner's proposed building would be used initially as a *270 dormitory. If that were the case, the mere possibility that it could later be converted to illegal apartment use would not justify withholding a building permit. But here, the Department of Buildings doubted that dormitory use would ever be possible, and asked for assurancesin the form of a connection with an educational institutionthat it would be.
To seek such assurances seems no more than prudent. It would create needless problems if petitioner built a 19 story building, only to find that it could not use it in a legally-permitted way. The City would then face a choice between waiving the legal restrictions and requiring the building to remain vacant or be torn down. The City's officials did not act arbitrarily or capriciously in trying to avoid that dilemma.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
Order reversed, etc.
NOTES
[*] During the course of its discussions with petitioner, the Department promulgated a new regulation (1 RCNY 51-01) governing applications for permits to build dormitories. The requirements this regulation imposes are similar to those the Department imposed on petitioner here, but both sides agree that the regulation does not apply to this case.