■ In the Matter of EXCHANGE PLAZA PARTNERS, Petitioner, v CITY OF NEW YORK et al., Respondents.—Petition, pursuant to CPLR article 78, transferred to this court by order of the Supreme Court, New York County (Myriam J. Altman, J.), entered April 18, 1989, to review a determination of respondent, Commissioner of the Department of Finance of the City of New York, dated October 26, 1988, which assessed petitioner for a tax deficiency under the New York City Real Property Transfer Tax Law in the principal amount of $500,-000 plus interest and penalties of $393,144.82 for a total of $893,144.82, unanimously denied, the determination confirmed, and the proceeding dismissed, without costs.

This proceeding arises out of a transaction in which petitioner sold an office building to Aetna Life Insurance Company (Aetna) for a total purchase price of $59,093,527 pursuant to a contract of sale dated July 29, 1981. At the time the property was conveyed (Feb. 23, 1983), there were various construction loans outstanding in the aggregate amount of $50,000,000 which were secured by a series of five mortgages held by Manufacturers Hanover Trust Company (MHT). At the closing, petitioner transferred title to the property subject to the mortgages because Aetna did not have sufficient funds to pay them off, as contemplated by the contract of sale.

On the following day (Feb. 24, 1983), in accordance with a document entitled "Tri-Party Agreement" executed by Aetna, MHT and petitioner, the mortgages were assigned by MHT to the Philadelphia National Bank (PNB). Simultaneously, PNB and Aetna executed a note modification agreement in which Aetna, as maker, agreed to pay to PNB, as payee, $50,000,000, secured by the various mortgages assigned by MHT to PNB. Because only $9,093,527 changed hands at the closing, the transfer tax, consisting of 1% of the net consideration, was paid on only this amount.

For contracts on or before February 1, 1982, a transfer tax is required to be paid in the amount of 1% of the net consideration received upon a transfer of real property (Administration Code of City of New York § 11-2102 [2], formerly § II46-2.0 [2]). The justification advanced by petitioner in support of its action is that the $50,000,000 construction loan

assumed by Aetna constitutes a "lien or encumbrance on the real property or interest therein which existed before the delivery of the deed and remains thereon after the delivery of the deed", an item which is expressly excluded from the definition of "net consideration" pursuant to section 11-2101 (5) of the Administrative Code of the City of New York (formerly § II46-1.0 [5]). Respondents, however, determined that a transfer tax is required to be paid on the total purchase price and found a deficiency of $500,000. In addition, respondents assessed a penalty against petitioner for its negligence in underpaying the tax (Administrative Code § 11-2114 [c], formerly § II46-14.0 [c]) in the amount of 5% of the underpayment, for a total amount due of $893,144.82, including interest.

Petitioner's arguments in justification of its position are too transparent to be worthy of extensive comment. It is clear that petitioner received consideration of $59,093,527. There is no dispute as to the $9,093,527 actually paid by Aetna at the closing. As to the remaining $50,000,000, it is readily apparent that the effect of the various transactions is that an obligation of petitioner (a construction loan of $50,000,000 from MHT) became an obligation of the purchaser, Aetna (a note in the amount of $50,000,000 payable to PNB). It is axiomatic that a party whose obligation is discharged by another receives consideration in the amount discharged *(see, Matter of Auerbach v State Tax Commn.,* 142 AD2d 390, 394). The new loan obtained by Aetna is a transaction between different parties on different terms, including duration and interest rate, and cannot be considered a continuation of the preexisting mortgage obligation incurred by petitioner.

It is not significant that Aetna obtained its financing on the day after closing. It is the substance of a transaction, viewed in its entirety, which is material to a determination of its tax consequences *(Commissioner v Court Holding Co.,* 324 US 331, 334). The financing obtained by Aetna from PNB was clearly an integral part of the transaction and must be characterized as a purchase-money mortgage. Petitioner has therefore failed to demonstrate that its transaction unambiguously falls within the terms of the claimed exclusion, and respondent's disallowance must be held to be proper *(Matter of Grace v New York State Tax Commn.,* 37 NY2d 193, 197).

The penalty assessed against petitioner pursuant to section 11-2114 (c) of the Administrative Code (formerly § II46-14.0 [c]) is entirely appropriate despite the absence of intentional wrongdoing. While its decision not to pay the taxes may have

been made in good faith and upon advice of counsel, that is not a sufficient basis to warrant setting aside the penalty *(Matter of Auerbach v State Tax Commn.,* 142 AD2d 390, 395, *supra).* The burden is on the taxpayer to demonstrate that a penalty was improperly assessed *(Matter of LT & B Realty Corp. v New York State Tax Commn.,* 141 AD2d 185), and petitioner has not sustained its burden. Concur—Murphy, P. J., Kupferman, Asch, Wallach and Rubin, JJ.