Barnes Grp. v. Comm'r

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of November, two thousand fourteen.

PRESENT:    BARRINGTON D. PARKER,
            GERARD E. LYNCH,
            SUSAN L. CARNEY,
                        *Circuit Judges.*
_____

BARNES GROUP, INC. AND SUBSIDIARIES,
                        *Petitioner-Appellant*,

                v.                                    No.    13-4298

COMMISSIONER OF INTERNAL REVENUE,
                        *Respondent-Appellee.*

_____

APPEARING FOR APPELLANT:        ROBIN L. GREENHOUSE, McDermott Will & Emery LLP, Washington, D.C.

APPEARING FOR APPELLEES:        DEBORAH K. SNYDER, Tax Division, U.S. Department of Justice (Richard Farber, Tax Division, U.S. Department of Justice, *on the brief*) *for* Kathryn Keneally, Assistant Attorney General.

Appeal from the United States Tax Court (Joseph Goeke, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the decision of the United States Tax Court is AFFIRMED.

Petitioner-appellant Barnes Group, Inc. ("Barnes") and subsidiaries appeal from a decision of the United States Tax Court sustaining the I.R.S. Commissioner's adjustments to Barnes's 2000 and 2001 tax returns and its imposition of a twenty-percent penalty for substantial understatement of tax. We assume the parties' familiarity with the facts and procedural history in this case, which are described in the Tax Court's thorough opinion. See Barnes Group, Inc. v. Comm'r, 105 T.C.M. (CCH) 1654, 2013 WL 1629248 (U.S. Tax Ct. April 16, 2013).

1.    Deficiency

      a.    Rev. Rul. 74-503

Barnes contends that the Commissioner is precluded by Rev. Rul. 2006-2 from challenging Barnes's tax position because it was taken in "reasonabl[e] reli[ance] on the conclusions in Rev. Rul. 74-503." 2006-1 C.B. 261. More generally, Barnes contends that the Commissioner may not argue against the legal principles set forth in Revenue Rulings. Barnes misunderstands the Commissioner's position. The Commissioner does not dispute the legal principles set forth in Rev. Rul. 74-503; he is arguing that Rev. Rul. 74-503 is inapplicable to the facts of this case.

We agree with the Commissioner. Barnes's position ignores the effect of the step transaction doctrine. Rev. Rul. 74-503 addressed the tax treatment of an isolated exchange of stock, and therefore provided no guidance on when the individual steps in an

2

integrated series of transactions will be disregarded under the step transaction doctrine. See 1974-2 C.B. 117. Taxpayers have long been cautioned against relying upon Revenue Rulings "unless the facts and circumstances are substantially the same." 26 C.F.R. 601.601(d)(2)(v)(e). We therefore conclude that Barnes did not reasonably rely on Rev. Rul. 74-503 and that the Commissioner is not precluded from challenging Barnes's tax position.

> b. Step Transaction Doctrine

The step transaction doctrine is a manifestation of the broader tax principle that substance should prevail over form. Associated Wholesale Grocers, Inc. v. United States, 927 F.2d 1517, 1521 (10th Cir. 1991). "By emphasizing substance over form, the step transaction doctrine prevents a taxpayer from escaping taxation. The doctrine treats the steps in a series of formally separate but related transactions involving the transfer of property as a single transaction, if all the steps are substantially linked." Greene v. United States, 13 F.3d 577, 583 (2d Cir. 1994) (internal quotation marks omitted).

In deciding whether to invoke the step transaction doctrine, courts generally apply one of three alternate tests: (1) the binding commitment test, (2) the end result test, and (3) the interdependence test. Superior Trading, LLC v. Comm'r, 137 T.C. 70, 88 (2011). Here, the Tax Court applied the step transaction doctrine under the interdependence test. This test focuses on whether a series of transactions are "so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series." Greene, 13 F.3d at 584 (internal quotation marks omitted). "To apply this test, a

court must determine whether the individual steps had independent significance or whether they had meaning only as part of the larger transaction." Id. (internal quotation marks omitted).

The Tax Court properly applied the step transaction doctrine to collapse the series of transactions through which Barnes obtained the funds of its Singaporean subsidiary, Associated Spring-Asia PTE Ltd. ("ASA"), by channeling the funds through a foreign financing subsidiary ("Bermuda Finance") and a domestic financing subsidiary ("Delaware Finance"), both created solely to facilitate the transfer. Each transaction in this series but the last – a purported loan to Barnes from Delaware Finance – was completed pursuant to an Agreement and Plan of Reinvestment that acknowledged these transactions comprised "a single integrated plan." App. at 834. While the purported loan to Barnes was not explicitly provided for in the Agreement, the transactions contemplated by the Agreement "would have been fruitless without a completion of the series" of transactions culminating in a transfer of the funds to Barnes. Greene, 13 F.3d at 584 (internal quotation marks omitted). Indeed, that transfer was the entire purpose of the series of transactions from the beginning. Thus, the steps by which ASA's funds were transferred to Barnes were correctly treated as one transaction.

c.    Valid Business Purpose

Barnes argues that application of the step transaction doctrine is inappropriate because the channeling of ASA's funds through Bermuda Finance and Delaware Finance, rather than directly to Barnes, served a valid business purpose. The Tax Court found to

4

the contrary, and as Barnes acknowledges, in order to prevail on appeal Barnes must show that these findings were clearly erroneous.  See Frank Lyon Co. v. United States, 435 U.S. 561, 581 n.16 (1978).

Barnes does not come close to meeting this standard.  To the contrary, we agree with the Tax Court that the vague, conclusory assertions offered below were insufficient to establish a non-tax purpose for the circuitous structure of these transactions. Moreover, to the extent Barnes has expanded its explanations on appeal, we find them unpersuasive.  A taxpayer's ability to articulate *some* business purpose for the intermediate steps in a series of related transactions will not necessarily preclude application of the step transaction doctrine.  See Associated Wholesale Grocers, 927 F.2d at 1527.  Here, any non-tax benefit of including the financing subsidiaries was, at best, a mere afterthought.

Lastly, we reject Barnes's argument that the step transaction doctrine should not be applied because the various transactions resulted in "an equity structure that could have been implemented only through the steps of transactions . . . actually executed." Appellant's Br. at 29-30.  The argument is misplaced.  The relevant question is not whether the structure could have been achieved in another way, but whether, leaving aside tax considerations, that structure served any valid business purpose other than to transfer ASA's funds to Barnes in a manner that had the appearance of a non-taxable transaction.

### d. Constructive Dividend

The Tax Court held that this series of transactions was in substance a dividend from ASA to Barnes. Barnes argues that that conclusion rested on a clearly erroneous finding that Delaware Finance's loan to Barnes and Bermuda Finance's investment in Delaware Finance preferred stock were not respected as bona fide transactions. First, Barnes contends that the Tax Court clearly erred in finding that Barnes failed to establish that interest payments to Delaware Finance or preferred dividend payments to Bermuda Finance were ever made. We disagree. Tax returns and testimony attesting to their accuracy do not conclusively establish the truth of the facts stated in a return. See Halle v. Comm'r, 7 T.C. 245, 250 (1946), aff'd, 175 F.2d 500 (2d Cir. 1949). Here, the transactions at issue were entirely between Barnes and its wholly owned subsidiaries. Given its ready access to each entity's records, Barnes should have been able easily to produce documents, such as board resolutions, general ledgers, or bank statements, evidencing actual payment.

Second, Barnes argues that the relevant investment agreements allowed the interest and preferred dividend payments to be accrued, and thus that nonpayment was not a failure to respect the agreements as bona fide. This misreads the agreements governing Barnes's loans from Delaware Finance, which state that "interest *shall* be paid annually on the 1st day of each December . . . commencing on December 1, 2002, and continuing until the Loan shall have been repaid." App. at 1112 (emphasis added). And although the Delaware Finance preferred dividends could be accrued, rather than paid annually, the

6

Tax Court was permitted to rely upon the failure *ever* to make dividend payments in support of its finding that the Delaware Finance preferred stock was not a bona fide investment.

Given Barnes's failure to establish that any of ASA's funds were repaid or that these transactions were bona fide investments, the Tax Court permissibly found that this series of investments was not "intended to be a temporary structure," but instead was "in substance dividend payments from ASA to Barnes." Barnes, 2013 WL 1629248, at *21.

2.    Accuracy-Related Penalty

a.    Substantial Authority

A taxpayer is subject to a twenty-percent penalty on the portion of an underpayment that is attributable to a substantial understatement of income tax. 26 U.S.C. § 6662(a),(b). However, the amount of the understatement is reduced to the extent it is attributable to a tax treatment for which the taxpayer had substantial authority. 26 U.S.C. § 6662(d)(2)(B). Substantial authority for a tax treatment exists only if the weight of the authorities supporting the treatment is substantial in relation to the weight of the authorities supporting contrary treatment. 26 C.F.R. 1.6662-4(d)(3)(i).

Barnes argues that Rev. Rul. 74-503 provided substantial authority for its tax position. We reject this argument. For the reasons set forth above, we conclude that Barnes did not reasonably rely on Rev. Rul. 74-503. Against this weak support for Barnes's treatment, the Commissioner's position is strongly supported by authority. The step transaction doctrine has long been well established, and, as discussed above, this

7

series of transactions falls neatly into the type of arrangements to which the doctrine has been applied.

b. Reasonable Cause and Good Faith

An accuracy-related penalty may not be imposed on any portion of an underpayment for which the taxpayer shows it acted with reasonable cause and in good faith. 26 U.S.C. § 6664(c)(1). Reasonable cause and good faith are assessed on a case-by-case basis and depend on all the pertinent facts and circumstances, including the taxpayer's efforts to assess his proper tax liability, the taxpayer's knowledge and experience, and the reliance on the advice of a professional. 26 C.F.R. 1.6664-4(b)(1). We review for clear error the Tax Court's determination that penalties were properly imposed by the Commissioner. Curcio v. Comm'r, 689 F.3d 217, 225 (2d Cir. 2012).

Barnes argues that the Tax Court clearly erred in finding that Barnes had not reasonably relied in good faith on an opinion letter issued to it by its tax advisor, Pricewaterhouse Coopers ("PwC"). But Barnes's proclaimed reliance on the PwC opinion suffers from the same fundamental defect as its reliance on Rev. Rul. 74-503: the opinion does not advise as to the tax consequences of the entire series of transactions transferring funds from ASA to Barnes. The opinion explains that the "specific question being considered is whether the investment by [Bermuda Finance] in preferred stock of [Delaware Finance] would result in income inclusions and related tax liabilities to Barnes" and warns that it "does not address any federal income tax consequences other than those directly expressed." App. at 3031, 3057. While the opinion acknowledges that

8

Delaware Finance would loan to Barnes the funds it received from Bermuda Finance, these loans are not among the "Transaction Steps" listed and analyzed in the opinion.

The Commissioner and the Tax Court applied the step transaction doctrine to conclude that the series of transactions *as a whole* – not simply Bermuda Finance's investment in Delaware Finance – constituted a constructive dividend from ASA to Barnes. As the PwC opinion did not even include a distribution to Barnes among the "Transaction Steps" it was analyzing, it could not reasonably be relied upon by "highly knowledgeable people," Barnes, 2013 WL 1629248, at *24, as an assessment of the tax consequences of the entire series of transactions, including the distribution to Barnes.

We have considered all of Barnes's remaining arguments and find them to be without merit. For the foregoing reasons the decision of the United States Tax Court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

9