[63 NYS3d 20]

GKK 2 Herald LLC, Petitioner, v City of New York Tax Appeals Tribunal et al., Respondents.

First Department, October 10, 2017

## APPEARANCES OF COUNSEL

*Stempel Bennett Claman & Hochberg, P.C.*, New York City (*Richard L. Claman* of counsel), for petitioner.

*Zachary W. Carter, Corporation Counsel*, New York City (*Amy H. Bassett* of counsel), for respondents.

## OPINION OF THE COURT

KAHN, J.

In this CPLR article 78 proceeding, invoking this Court's

original jurisdiction under CPLR 506 (b) (4), we are asked to decide whether the determination of respondent City of New York Tax Appeals Tribunal that petitioner's receipt of $111,375,000 was a taxable event was rationally based and supported by substantial evidence. For the reasons that follow, we find that it was.

## I. Statement of Facts

### A. Factual Background

On April 9, 2007, petitioner GKK2 Herald LLC acquired a 45% tenant-in-common (TIC) interest in real property located at 2 Herald Square in Manhattan, while nonparty SLG LLC (SLG) acquired the remaining 55% TIC interest in the property.

On December 14, 2010, 2 Herald Owner LLC (Herald LLC) was formed. On December 22, 2010, pursuant to a "TIC Contribution Agreement," petitioner and SLG contributed their respective 45% and 55% interests in the property to Herald LLC and in return received a 45% and 55% membership interest, respectively, in Herald LLC. The agreement also asserted that petitioner would pay "any and all" transfer taxes arising out of transactions. Furthermore, SLG had the sole right to terminate the TIC Contribution Agreement and sole conditional obligation to close.

That same day, petitioner and SLG executed an operating agreement (Herald LLC Operating Agreement) that provided that available profits and cash flow of the LLC would be "jointly determine[d] by members in their sole discretion," notwithstanding the set 45% and 55% membership interests. Petitioner and SLG also executed and delivered their respective deeds to their TIC interests in the property to Herald LLC.

Also on December 22, 2010, the parties entered into a Membership Interest Purchase Agreement (Purchase Agreement) under which petitioner agreed to sell and SLG agreed to purchase petitioner's 45% membership interest in Herald LLC for $25,312,500, in addition to petitioner's release of its pro rata mortgage obligation, in the amount of $86,062,500 (totaling $111,375,000). Petitioner thereupon withdrew as a member of Herald LLC. Recitals in the Purchase Agreement describe the various separate but related transactions: the formation of Herald LLC, execution of Herald LLC's Operating Agreement, acquisition of real property interest by Herald LLC and sale of petitioner's membership interest to SLG.

Petitioner timely filed a real property transfer tax (RPTT) return reporting the sale of its membership interest in Herald LLC to SLG. The return reported no RPTT due, claiming that the transaction qualified for the "mere change of form of ownership" exemption to imposition of the RPTT (Administrative Code of City of NY § 11-2106 [b] [8]). Under the Administrative Code's "mere change in form of ownership" exemption, "a deed, instrument or transaction conveying or transferring real property or an economic interest" is exempt "to the extent the beneficial ownership of such real property or economic interest therein remains the same" (Administrative Code § 11-2106 [b] [8]). For the purpose of the exemption, a determination of whether the beneficial ownership of the real property or economic interest remains the same before and after the transaction "will be based on the facts and circumstances" (19 RCNY 23-05 [b] [8] [iv]).

Respondent Commissioner of Finance of the City of New York (the Commissioner) audited the transactions and concluded that the entire $111,375,000 consideration paid for petitioner's interest was taxable because the individual transactions resulting in the transfer of property interest should be treated as a single, taxable transaction not subject to the "mere change in form" exemption, however.

## B. Procedural History

Petitioner challenged the Commissioner's ruling before an Administrative Law Judge (ALJ) of the Tribunal, who sustained the Commissioner's ruling.

Petitioner then appealed the decision of the ALJ to the full Tribunal, which affirmed the decision of the ALJ. The Tribunal reasoned that, pursuant to the step transaction doctrine, the series of separate but related events taken by petitioner to transfer its interest may be treated as a single taxable transaction (see Gregory v Helvering, 293 US 465, 469 [1935]; Associated Wholesale Grocers, Inc. v United States, 927 F2d 1517, 1527-1528 [10th Cir 1991]). The Tribunal found that the series of steps taken by petitioner met the criteria of both alternative tests for application of the doctrine. The Tribunal determined that the transactions met the "end result test," pursuant to which the doctrine may be applied if a series of apparently separate transactions were prearranged parts of what was actually a single transaction cast from the outset to achieve the ultimate result (see Greene v United States, 13 F3d 577, 583-

584 [2d Cir 1994]), in that after all steps were completed, petitioner no longer held any interest in the property directly or indirectly, was relieved of any liability under the mortgage and was entitled to receive $25,312,500.

Alternatively, the Tribunal found that the series of transactions in question satisfied the "interdependence test," under which the doctrine may be applied because the transactions in question were "so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series" (*King Enters., Inc. v United States*, 418 F2d 511, 516 [Ct Cl 1969]), in that the various agreements described each of the steps taken by the parties, all of which were interrelated and completed within one day. The Tribunal noted that nothing in the record suggested that any of the steps would have been taken independently of the others.

Additionally, the Tribunal found that the "mere change in form of ownership" exemption did not apply, since the one step in the series that had to be substantive was the receipt by petitioner of a beneficial interest in Herald LLC, yet it was the most ephemeral step in the transaction. The Tribunal found that the "facts and circumstances" analysis of the RPTT rules, which determines the extent to which the beneficial ownership of real property remains the same following the transaction, represents an independent basis for concluding that petitioner's conveyance of its TIC interest did not satisfy the "mere change" exemption. In the Tribunal's view, the "facts and circumstances," including the simultaneous occurrence of various steps in the overall conveyance process, established that neither petitioner nor SLG had any intention of petitioner retaining a beneficial ownership in the property following the parties' transactions of December 22, 2010. Furthermore, the Tribunal noted that the Herald LLC Operating Agreement failed to identify the interests of the petitioner and SLG in the LLC such as profits, losses and cash flow, further evincing a change in beneficial ownership. The Tribunal observed that other provisions of the TIC Contribution Agreement were more typical of a sale than the formation of a joint venture, including the fact that the petitioner was released from obligations under the mortgage loan and received back its collateral.

Petitioner also argued that it was entitled to the "mere change in form" exemption because the circumstances of this case were similar to those presented in "Example C" of 19 RCNY 23-05 (b) (8) (ii), which regulation includes several

examples of scenarios in which the "mere change" exemption would be applicable. Example C reads as follows:

> "Example C: X Company is a New York general partnership composed of two equal partners, A and B. X Company owns unencumbered real property located in New York City with a fair market value of $1,000,000. On January 1, 1995, X Company is converted to a limited liability company through the filing of articles of organization under applicable state law. After the conversion, B sells a 49% interest in X Company to A so that A owns a 99% interest and B owns a 1% interest. If under the applicable state law, X Company is considered to be the same entity as before the conversion, the conversion will not be considered a transfer of real property or an economic interest in real property. Immediately after the conversion, the beneficial ownership of X Company is deemed identical to the beneficial ownership of the old general partnership and no transfer of an economic interest has occurred. B's transfer of a 49% interest in X Company to A will not constitute a controlling economic interest transfer subject to tax. However, the transfer of the 49% interest may be aggregated with a subsequent related transfer within three years so as to constitute a transfer of a controlling economic interest. See § 23-02 (2)[1] definition of 'Controlling interest' governing aggregation of related transfers."

The Tribunal also found that Example C was not relevant to the overall transaction at hand. The Tribunal found Example C to be wholly distinguishable, because the question presented was not whether the contribution should be aggregated with the sale of petitioner's interest in Herald LLC to SLG to comprise a controlling economic interest transfer, but whether

---

1. This citation evidently refers to 19 RCNY 23-02 (4) (2), which provides, in pertinent part:

"Controlling interest" shall mean: . . .

"(2) Aggregation. A transfer of a controlling economic interest made by one or several persons, or in one or several related transfers, is subject to the transfer tax. Related transfers are aggregated in determining whether a controlling economic interest has been transferred. Related transfers include transfers made pursuant to a plan to either transfer or acquire a controlling economic interest in real property."

the facts and circumstances of that sale caused the initial contribution to be taxable.

Finally, the Tribunal rejected petitioner's claim that a New York State ALJ's finding that petitioner was exempt from taxes in these transactions under New York State law warranted a different result in this case (*see Matter of GKK 2 Herald LLC*, 2016 WL 3131497 [NY St Div of Tax Appeals DTA No. 826402, May 26, 2016]). The Tribunal found that the issues addressed by the State ALJ differed from those before the Tribunal. Specifically, the Tribunal noted, in the case before the State ALJ, the New York State Department of Taxation and Finance had conceded that petitioner's initial contributions of its TIC interest in the property to Herald LLC qualified for the "mere change in form" exemption from the New York State Real Estate Transfer Tax (RETT) (*see id.* at *3). Thus, as the Tribunal observed, the State ALJ examined only the issue of whether SLG acquired a controlling economic interest in Herald LLC. On that issue, as the Tribunal noted, the State ALJ concluded that, in determining whether SLG had acquired a 100% controlling interest in Herald LLC, the State RETT regulations do not authorize the aggregation of nontaxable transfers with taxable transfers (*id.* at *4). Moreover, the issue of the applicability of the step transaction doctrine, relied upon by the Tribunal in these proceedings, was not addressed in the State ALJ's decision.

## II. Standard of Review

This Court's review of the Tribunal's determination is limited to whether the determination rendered by the Tribunal is rationally based and supported by substantial evidence (*Matter of Stork Rest. v Boland*, 282 NY 256, 273-274 [1940]; *Matter of National Bulk Carriers Inc. & Affiliates v New York City Tax Appeals Trib.*, 61 AD3d 522 [1st Dept 2009], *lv denied* 12 NY3d 716 [2009]). A finding is supported by substantial evidence when there is such relevant proof as a "reasonable mind might accept as adequate to support a conclusion" (*see Stork*, 282 NY at 274, citing *Consolidated Edison Co. v NLRB*, 305 US 197, 229 [1938]). Even if petitioner's construction of the tax law is reasonable, petitioner cannot prevail if he fails to prove that such construction is the "only reasonable construction" (*National Bulk Carriers*, 61 AD3d at 523, quoting *Matter of Bamberger Polymers v Chu*, 111 AD2d 589, 591 [3d Dept 1985], *lv denied* 66 NY2d 603 [1985]). Exemption provisions "must be construed against the taxpayer" (*Matter of CBS Corp. v Tax*

*Appeals Trib. of State of N.Y.*, 56 AD3d 908, 909-910 [3d Dept 2008], *lv denied* 12 NY3d 703 [2009]; *Matter of Mobil Oil Corp. v Finance Adm'r of City of N.Y.*, 58 NY2d 95, 99 [1983]).

The construction of exemption provisions against the taxpayer must be taken into consideration in determining whether the taxpayer has met its burden of proof to overcome tax assessments (*see Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 195 [1975]). Thus, the taxpayer must establish entitlement to the exemption and must show "that its interpretation of the statute is . . . the only reasonable construction" (*CBS Corp.*, 56 AD3d at 909-910 [involving the application of the "mere change in form" exemption to State RETT], citing *Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49 [1993]; *see also Grace*, 37 NY2d at 197 [" 'a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms' "]).

III. Discussion

### A. Step Transaction Doctrine

█ As a threshold matter, this Court must determine whether respondents had the authority to apply the step transaction doctrine. Petitioner argues that because the Tribunal is not a court of law, it has no such authority. Petitioner's argument fails for the following reasons.

The Commissioner has the power to "assess, determine, revise and adjust [real property transfer] taxes" (Administrative Code § 11-2112 [7]). In addition, the Commissioner may "make, adopt and amend rules and regulations" appropriate to implement the RPTT (*see* 19 RCNY 23-01 [a]).

The New York City Charter confers upon the Tribunal "the same power and authority as the commissioner of finance to impose, modify or waive any taxes within its jurisdiction, interest thereon, and any applicable civil penalties" (NY City Charter § 168 [a]). The "tribunal may, based upon the record of the hearing before the administrative law judge, make its own findings of fact and conclusions of law and issue a decision either affirming, reversing or modifying the determination of the administrative law judge" (NY City Charter § 169 [d]).

Further, "[t]he tribunal shall follow as precedent the prior precedential decisions of the tribunal . . . , the New York State Tax Appeals Tribunal or of any federal or New York state court

or the U.S. Supreme Court insofar as those decisions pertain to any substantive legal issues currently before the tribunal" (NY City Charter § 170 [d]). Here, application of the step transaction doctrine to the RPTT is a substantive legal issue. Thus, the Tribunal had the authority to follow precedent governing the application of that doctrine.

The step transaction doctrine has deep common-law roots, having originated 82 years ago in *Gregory v Helvering* (293 US 465, 469 [1935]). It has been repeatedly applied over the years by the United States Supreme Court (*see e.g. Commissioner v Court Holding Co.*, 324 US 331, 334 [1945]) and other federal courts (*see e.g. Barnes Group, Inc. & Subsidiaries v Commissioner of Internal Revenue*, 593 Fed Appx 7, 9-10 [2d Cir 2014]; *Greene v United States*, 13 F3d 577, 583 [2d Cir 1994]; *Crenshaw v United States*, 450 F2d 472 [5th Cir 1971], *cert denied* 408 US 923 [1972]).

The New York State Tax Appeals Tribunal has also applied the doctrine in *Matter of Waterman Inv. Co.* (1997 WL 519543, 1997 NY Tax LEXIS 348 [NY St Div of Tax Appeals DTA No. 813224, Aug. 7, 1997]).

> "The step transaction doctrine treats the steps in a series of separate but related transactions involving the transfer of property as a single transaction, if all the steps are substantially linked. Rather than viewing each step as an isolated incident, the steps are viewed together as components of an overall plan . . . ." (*Waterman*, 1997 WL 519543, *9, 1997 NY Tax LEXIS 348, *25, citing *Greene*.)

The State Tribunal in *Waterman* explained, again following *Greene*, that "the step transaction doctrine will be invoked if it appears that a series of separate transactions were prearranged parts of what was a single transaction, cast from the outset to achieve the ultimate result" (*Waterman*, 1997 WL 519543, *9, 1997 NY Tax LEXIS 348, *25). In applying the step transaction doctrine, the State Tribunal found it appropriate to ignore each individual step in the chain of transactions and instead viewed the transaction as an integrated whole in determining its tax ramifications. It upheld the decision of an Administrative Law Judge finding that a series of transactions transferring partnerships constituted a single property transfer, effectively conveying two parcels of land for a noncontrolling interest in a partnership.

Other New York decisional law, both in this Court and others, has adopted a similar approach. In *Matter of Exchange*

*Plaza Partners v City of New York* (159 AD2d 333 [1st Dept 1990], *lv denied* 76 NY2d 702 [1990]), this Court found that the purchase of a building and subsequent release and assignment of a mortgage obligation should be viewed in its entirety as one transaction and incorporated as consideration for purposes of the RPTT, stating that "[i]t is the substance of a transaction, viewed in its entirety, which is material to a determination of its tax consequences" (*id.* at 334, citing *Commissioner v Court Holding Co.*, 324 US at 334). At least one other intermediate appellate court of this state has repeatedly applied a similar approach in aggregating multiple transfers of real property when conveyed separately in order to attain a tax exemption (*see Matter of Von-Mar Realty Co. v Tax Appeals Trib. of State of N.Y.*, 191 AD2d 753 [3d Dept 1993], *lv denied* 82 NY2d 655 [1993]; *Matter of Brooks v Tax Appeals Trib. of State of N.Y.*, 196 AD2d 140 [3d Dept 1994]). And in *Matter of Fleetwood Realty Co.* (1995 WL 124269, * 5, 1995 NY City Tax LEXIS 6 [NY City Tax Appeals Trib TAT(H) 93-294(RP), TAT(H) 95-12(RP), Feb. 28, 1995]), an Administrative Law Judge of the New York City Tax Appeals Tribunal relied on the Supreme Court's application of the step transaction doctrine in *Court Holding* as well as this Court's decision in *Exchange Plaza Partners* to reject any "formalistic distinction" between related transactions to view "the true substance" of an integrated multistep transaction in finding RPTT liability. There, the ALJ held that the release of a mortgage lien held by the taxpayer, followed by the merger of a leasehold interest (also held by the taxpayer) with a fee interest constituted a single, taxable transfer of interest. The ALJ concluded that the merger of the leasehold and fee interests was clearly contemplated by all parties at the time the debt was released in order to legally convert the property into a condominium form of ownership (*Matter of Fleetwood Realty Co.*, 1995 WL 124269, *6-7).

In sum, the Tribunal had the authority to invoke the step transaction doctrine, following longstanding precedent in the United States Supreme Court, other federal courts, New York courts, and the New York State Tax Appeals Tribunal, as well as its own precedent (*see* NY City Charter § 170 [d]).

Although petitioner correctly observes that the City withdrew a proposed regulation which would have incorporated the step transaction doctrine into the agency's determination of whether the change of form exemption should be applied and instead

adopted a substitute regulation (*see* 19 RCNY 23-05 [b] [8] [iv]), that fact is not determinative. The substitute regulation as promulgated provided that application of the change of form exemption "will be based on the facts and circumstances" of the case (*id.*), and here, the Tribunal rationally determined that that provision of the regulation was broad enough, in this case, to include application of the step transaction doctrine in determining whether the change of form exemption should apply. As we have previously observed, "respondents were not required to promulgate a rule pursuant to the City Administrative Procedure Act" but "could, instead, develop guidelines in the course of adjudicating individual cases" (*Matter of Murphy & O'Connell v Tax Appeals Trib.*, 93 AD3d 530, 531 [1st Dept 2012], citing *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 109 AD2d 140, 148 [3d Dept 1985, Levine, J., dissenting in part], *revd* 66 NY2d 948 [1985]), so long as those guidelines are "consistent with the statutory framework" (*Diocese of Albany*, 109 AD2d at 148 [Levine, J., dissenting]). As then-Justice Levine explained, "[T]he choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency" (*id.*).

■ Having established that the Tribunal was empowered to apply the doctrine, we now turn to the question of whether the Tribunal had a rational basis for applying the doctrine in this case. This Court's review of the Tribunal's determination is limited "solely to the grounds invoked by the [Tribunal], and if those grounds are insufficient or improper, [this Court] is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis" (*see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 593 [1982]). Based on our review of the Tribunal's determination, as limited by *Gliedman*, we find that the Tribunal's affirmation of the ALJ's determination, based upon its conclusion that the step transaction doctrine was applicable to the transactions in question because they satisfied both the end result and interdependence tests, was both rationally based and supported by substantial evidence for the following reasons.

As the Tribunal rationally found, the end result test was satisfied because after all the steps to be taken to effect the transfer of petitioner's interest were completed, petitioner only intended to transfer its 45% TIC interest to Herald LLC for cash and debt relief. Once all of the transactions had occurred,

petitioner no longer held any interest in the property directly or indirectly, was relieved of any liability under the mortgage and was entitled to receive $25,312,500. Furthermore, the TIC Contribution Agreement contained various provisions that were structured for the sale and not the formation of a joint venture of any kind. For example, petitioner was released from all obligations under the mortgage loan and received back collateral. Moreover, the parties' rights to terminate the overall transaction were not reciprocal, as SLG had the sole right to terminate the TIC Contribution Agreement and sole conditional obligation to close.

Furthermore, the Tribunal rationally found that the interdependence test was satisfied as the various agreements (TIC Contribution Agreement, Herald LLC Operating Agreement and Purchase Agreement) describe each of the interrelated steps, all of which were completed in one day. Even the transfer of petitioner's and SLG's interests to Herald LLC (TIC Contribution Agreement), the most pivotal step of the series of transactions, was rationally found by the Tribunal to be ephemeral, as all that petitioner received was a transitory interest, lacking in both substance and independent significance. Moreover, the Herald LLC Operating Agreement lacked explicit determinations of profits, cash flows and other important aspects of the agreement. Given that there was a failure to specify the nature and amount of the components of the interest to be transferred, it would have been rational for the Tribunal to infer that it was never petitioner's intention to remain a member of Herald LLC. Additionally, the Tribunal correctly noted that nothing in the record suggested that any of the steps would have been taken independently of the others. Thus, the Tribunal's conclusion that, upon its application of both the end result and interdependence tests to the transactions in question, both tests were satisfied, the step transaction doctrine should be applied and the transactions should be deemed a single taxable transaction, was both rationally based and supported by substantial evidence.

## B. "Mere Change in Form of Ownership" Exemption

Even if this Court were to view the Tribunal's application of the step transaction doctrine as both irrational and lacking in evidentiary support, and conclude that the Tribunal should have treated the series of transactions in question as separate, independent transactions, it would be unavailing to petitioner.

■ Petitioner argues that the "mere change in form of ownership" exemption applies because in the transfer of petitioner's real property interest for a membership interest in Herald LLC, its beneficial ownership remained the same, regardless of whether or not petitioner's rights under the TIC and LLC regimes remained the same. Petitioner thus faults the Tribunal's refusal to apply the exemption to the transactions in question as irrational and not based upon substantial evidence. This argument fails for the following reasons.

In *Matter of CBS Corp. v Tax Appeals Trib. of State of N.Y.* (56 AD3d 908 [2008], *supra*), the Appellate Division, Third Department, held that beneficial ownership encompasses "command and control over property" in addition to financial or economic interest (*id.* at 910). Beneficial ownership also includes entitlement to profits, dividends and bonuses (*Yelencscis v Commissioner of Internal Revenue*, 74 TC 1513, 1527-1528 [1980]). In *CBS Corp.*, the Third Department held that the petitioner corporation was not entitled to a "mere change in form" exemption, as the corporation's shareholders had exchanged their voting stock for nonvoting stock, thereby relinquishing their command and control of real property owned by the corporation and changing their beneficial ownership (56 AD3d at 909-910). Here, petitioner and SLG contributed their respective 45% and 55% interests in the property to Herald LLC, and then, on the same day, petitioner sold its membership interest in Herald LLC to SLG. The record indicates that there was no express agreement with respect to petitioner's entitlement to profits and cash flow subsequent to the transactions in question. Thus, here, as in *CBS Corp.*, petitioner relinquished command and control of its property interests (*id.* at 910), and failed to carry its burden of proof that there was no change in beneficial ownership (*see Matter of Grace v New York State Tax Commn.*, 37 NY2d at 195).

In any event, at the conclusion of the transactions in question, all of which took place in one day, petitioner had neither any interest in the real property in question nor any membership interest in Herald LLC. From these "facts and circumstances," the Tribunal rationally inferred that petitioner had no intention of retaining any beneficial ownership of the real property in question or of rights to profits and cash flow derived from that real property or from Herald LLC. Thus, petitioner has failed to demonstrate that the Tribunal's determination as to the inapplicability of the "mere change in form of owner-

ship" exemption to the transactions in question was neither rationally based nor supported by substantial evidence (*cf. Matter of Schrier v Tax Appeals Trib. of State of N.Y.*, 194 AD2d 273, 275-276 [3d Dept 1993] ["mere change of identity or form of ownership" exemption applied where joint tenants exchanged respective shares of corporate stock for same proportionate share of interest in real property and thus retained same beneficial ownership of their respective interests], *lv dismissed* 83 NY2d 944 [1994]; *Matter of Trump Vil. Section 4, Inc.*, 2013 WL 3778024, *8 [NY City Tax Appeals Trib TAT(H) 10-34(RP), July 11, 2013] ["mere change in form" exemption applied where no change in shareholders' interests in housing cooperative corporation notwithstanding increased value of what shareholders owned subsequent to dissolution-reconstitution of corporation]).

We also reject petitioner's argument that the Tribunal irrationally failed to find that petitioner is entitled to the "mere change" exemption from paying the RPTT under the hypothetical presented in Example C. Example C is a hypothetical example discussing controlling interests under the "Pan Am" amendments.[2] It demonstrates the distinction drawn under those amendments between transfers of noncontrolling ownership interests directly in real property, which are to be taxable, and transfers of noncontrolling interests in intermediary entities that themselves own the real property, which are not to be taxable under the amendments. Example C exemplifies how, in a single transaction, beneficial ownership may remain the same. It addresses a situation in which a *partnership* (X Company) that owns real property, and that is composed of two equal partners (A and B), at the outset, converts itself into an LLC. Upon that conversion, neither a transfer of real property nor a transfer of any economic interest in the real property owned by X Company has occurred. The situation described in Example C is wholly different from that in the instant case,

---

**2.** In 1981, the sale of shares of the entity that owned what was then known as the Pan Am Building was deemed a transfer of shares rather than a sale of a direct ownership interest in the building, thereby rendering the transaction not subject to the RPTT. In response, in 1986, the City amended the Administrative Code to define " 'Transfer' or 'transferred' " as limited to transfers where the "shares of stock or interest or interests constitute a controlling interest in such . . . entity" (Administrative Code § 11-2101 [7]) and to define "Controlling interest" as "fifty percent or more" of the equity of an entity owning real property (Administrative Code § 11-2101 [8]). Thus, these two "Pan Am" amendments rendered transfers of controlling interests (50% or more) in entities owning real property subject to the RPTT.

where petitioner and SLG directly owned the real property as tenants in common, and transferred ownership of that real estate to Herald LLC in the initial transaction here at issue. Here, at this point, a real estate transfer had occurred, while in Example C no such transfer was occasioned by the conversion of X Company, the owner of the real estate, from a general partnership to a limited liability company.

The hypothetical example then provides that when Partner A purchases a 49%, noncontrolling interest in X Company LLC from Partner B, that single transfer of an economic interest will not become taxable, so long as X Company (the owner of the real property) is considered the same entity both before and after the change in its own legal form. In the instant case, by contrast, petitioner, which held title to a 45% TIC interest in the property, transferred that ownership interest to the newly formed Herald LLC. Notwithstanding petitioner's receipt of a 45% interest in Herald LLC, which it immediately sold to SLG, petitioner and Herald LLC are not "the same entity" as contemplated in Example C. Accordingly, neither Example C nor the change of form exemption applies in these circumstances.

Although Example C further discusses how a transfer of a noncontrolling interest (49%) in a company with an economic interest in real property may be aggregated with other subsequent related transfers of interests within a three-year period to constitute a transfer of a controlling interest, here, as the Tribunal found, there is no issue of aggregation of transfers.

Thus, the Tribunal rationally found that Example C is wholly inapplicable to the instant case.

### C. Effect of State ALJ Ruling

We agree with the Tribunal that the State ALJ's decision (*Matter of GKK 2 Herald, LLC*, 2016 WL 3131497, *3 [NY St Div of Tax Appeals DTA No. 826402, May 26, 2016]) on the State RETT consequences of these transactions is not binding upon this Court (*see* NY City Charter § 170 [d]; 20 NYCRR 3000.15 [e] [2]). We further agree with the Tribunal that the issues presented to it differed from those raised before the State ALJ, for the reasons there stated.

At the outset, the State ALJ's decision is distinguishable, because the State ALJ did not have occasion to consider the issue of whether petitioner's initial contribution of its TIC interest in the property to Herald LLC qualified for the "mere

change in form" exemption. Prior to the issuance of the State ALJ's decision, the New York State Department of Taxation and Finance, unlike the Commissioner here, had conceded that petitioner's contribution did qualify for that exemption, rendering consideration of that issue unnecessary. Because the "mere change" exemption issue had been resolved by stipulation of the parties, the State ALJ examined only the issue of whether petitioner's and SLG's tax-exempt initial transfers of their TIC interests to Herald LLC could be combined with petitioner's subsequent taxable transfer of its noncontrolling interest in Herald LLC to SLG to render the entire transaction taxable.

Further, the State ALJ held that 20 NYCRR 575.6 (d), a state regulation, does not authorize the aggregation of a nontaxable "mere change in form of ownership" transfer with a taxable transfer to achieve a single taxable transaction (2016 WL 3131497, *4). That holding is irrelevant to the factual scenario presented here, however. In this case, the initial transfers of petitioner's and SLG's TIC interests for membership interests in Herald LLC were both taxable, whether considered individually or as parts of a multistep unitary transaction, for the reasons stated. These transfers were followed by a transfer of petitioner's noncontrolling interest in Herald LLC to SLG, which transfer was also taxable.

Finally, the approach taken in the proceedings before the State ALJ, where the initial TIC transaction was conceded to be a "mere change in form" transaction prior to the State ALJ's consideration of whether all of the transactions could be aggregated and deemed a controlling interest transfer, would be procedurally barred here. Under the Rules of the City of New York, a determination of whether the "mere change" exemption may be applied cannot be made until after it has been determined whether a controlling interest transfer has occurred (see 19 RCNY 23-05 [b] [8] [ii]).[3] Thus, the State ALJ's determination is inapposite, both factually and procedurally,

---

3. As explained by the Tribunal, the City rule governing the applicability of the "mere change of ownership" exemption from the City RPTT differs from the State Tax Law provision concerning the "mere change" exemption to the State RETT, in that under the city rule, the "mere change" exemption is applied only after it has been determined whether a controlling interest transfer has occurred, but there is no such prerequisite to application of the "mere change" exemption from the State RETT under any state statute or regulation (compare 19 RCNY 23-05 [b] [8] [ii] ["the determination of whether a controlling economic interest has been transferred is made prior to the application of (the 'mere change of ownership') exemption"] with Tax Law

and cannot serve as either binding or persuasive authority for purposes of this decision.

We have considered petitioner's remaining arguments and find them unavailing.

Accordingly, the decision of respondent City of New York Tax Appeals Tribunal, dated July 15, 2016, which upheld the determination of the Administrative Law Judge, dated April 1, 2015, sustaining the determination of respondent Commissioner of Finance of the City of New York that the $111,375,000 of consideration petitioner received for its interest in real property was subject to the real property transfer tax, should be confirmed, the petition denied and the proceeding pursuant to CPLR article 78, commenced in this Court pursuant to CPLR 506 (b) (4), dismissed, without costs.

FRIEDMAN, J.P., MOSKOWITZ and GISCHE, JJ., concur.

Determination of respondent City of New York Tax Appeals Tribunal, dated July 15, 2016, confirmed, the petition denied, and the proceeding pursuant to CPLR article 78, dismissed, without costs.

---

§ 1405 [b] [6] [providing for "mere change of ownership" exemption without any prerequisite to its application]).